J. B. SPRINKLE v. KNIGHTS TEMPLAR AND MASONS LIFE INDEMNITY COMPANY.

(Decided April 11, 1899).

*Insurance—Application—False Representation—Fraud.*

1. It is required of an agent that he be found faithful in the performance of duty and the protection of the interests of the principal committed to his charge.

2. Where the replication alleges, and there is evidence on the part of the plaintiff tending to prove, that the application contained a false representation in regard to a material matter, knowingly inserted by the insurance agent, and signed by the insured—such false representation was a fraud upon the company and vitiated the policy.

3. Knowledge of the fraud by the agent in such case is not constructive notice to the principal—nor does the receipt of the premium amount to a waiver in the absence of actual notice. The premium, however, should be returned.

CIVIL ACTION upon an insurance policy on life of G. R. Sprinkle, in which plaintiff was the beneficiary, tried before *Green, J.,* at Fall Term, 1898, of MADISON Superior Court.

The insured died February 24, 1897. Recovery was re-

sisted on the ground that the application signed by the insured contained false and fraudulent answers to questions concerning his health prior to and at the time of the application, which invalidated the policy, issued October 15, 1896. The pleadings, evidence and charge of his Honor bearing upon the point and excepted to by defendant are sufficiently stated in the opinion. The issue controverted was as follows:

3. Was said policy obtained by misrepresentation and concealment of material facts relative to the said George R. Sprinkle's state of health at the time or prior to the time said application for insurance was made, as alleged in defendant's answer?

To this the jury responded, "No," and judgment was rendered for plaintiff. Defendant appealed.

*Messrs. W. W. Zachary* and *George A. Shuford,* for appellant.

*Messrs. J. M. Gudger, Jr.,* and *J. H. Merrimon,* for defendant.

MONTGOMERY, J. On the 15th of October, 1896, a policy of insurance was issued by defendant company to George R. Sprinkle, the beneficiary named being the father of the insured and the plaintiff in this action. On the 24th of February, 1897, a little more than four months after the date of the policy, the insured died. This action was brought by the plaintiff, the beneficiary, to recover the amount specified in the policy. It is not denied that the statements and representations embraced in the answers of the insured as they appear in the writing called the application, concerning his health prior to and at the time when the application was made, were material to the risk to be assumed by the company, and that the insurance was issued upon them, and

upon his agreement at the end of the application and answers, that if the same are in any respect false, the policy to be issued upon them to be void. The defendant in its answer averred that the policy was void because the insured in his application made and signed false and fraudulent answers and representations to questions put to him concerning his health prior to and at the time of the application, and particularly as follows: In answer to the question, "Have you had or been afflicted since your childhood with any of the following complaints—disease of the lungs or pulmonary complaints, spitting or raising of blood, bronchitis, asthma, rheumatism, general debility or any serious disease?" he answered, "No," when in truth and in fact he had had serious pulmonary complaints with hemorrhage and also pleurisy. In his replication the plaintiff alleged that the insured made truthful answers to the questions in the application, stating at the time to Parker, the defendant's agent, that he had had the measles, spitting or raising of blood, pleurisy and grippe, and that he had had a serious illness, but that in the face of that statement Parker, the agent, wrote in the application the answer to the question, "No;" that is, that the insured had had no such diseases.

On the trial the plaintiff testified that he was with his son, the insured, when the application was made and signed by the insured, and that he knew the insured had had measles, pleurisy and grippe, and that the insured had told him that he had had hemorrhages. The physician who made the physical examination (a Dr. Jay) was present when the application was made, and testified on the trial that he heard the insured say, in the hearing and presence of the agent who was filling up the application for the insured to sign, that he, the insured had had hemorrhages, had coughed and spit up blood, and that he had had measles and also pleurisy; that

he, Dr. Jay, in the course of the examination of the insured, when he came across the question, "Has the person had any serious illness," stopped to discuss the question with the agent, he knowing that the applicant had had serious diseases, when he was .told by Parker not to write down the true answer because the policy would be rejected by the company if he did, but to write down a false answer—the answer that the insured had had no serious disease; that the insured heard all that Parker said; that he wrote down the falsified answer and knew that it was false when he wrote it.

Now upon the pleadings and that evidence and a great deal more on the condition of the health of the insured at and before the time when the application was made, his Honor instructed the jury in substance that if they should find that at the time the insured made application that he informed Parker, the agent of the defendant, that he had had before that time a serious case of measles, grippe, pleurisy and spitting of blood, and that Parker instead of writing truthful answers to the questions concerning the health of the insured, falsified the answers of the insured, then there would be no fraud on the part of the insured; that the knowledge of Parker became the knowledge of the company, and that if the company received the premiums it waived all objection with regard to those matters of which it had implied knowledge. That instruction, as a whole, was misleading and erroneous. The testimony of Dr. Jay tended to prove that the agent Parker practiced a fraud, originated it, on the defendant in his procurement of the policy. Parker testified that he wrote the answers in the application truthfully and as they were made by the insured, and evidence of his good moral charter was introduced. The testimony of Dr. Jay, though, however suspicious it might appear, was evidence in the cause and it tended to prove fraud and deceit on the part

of Parker.   The evidence of Jay tended to prove that himself the examining physician, Parker the agent, and the insured all engaged in the plan to cheat and defraud the defendant. Parker professed to be acting as the agent of defendant, and the law required of him that he should be faithful to his trust and to do no act that would result designedly to the injury of his principal. If Jay's evidence was to be believed, Parker was acting directly and purposely against his principal's interest.   He must have known that if the company could have knowledge of his conduct it would have repudiated the entire transaction, for according to Jay's evidence, the whole scheme was based on fraud and intended from the start to deceive and to defraud the defendant.   Parker was acting entirely against the interest of the company, and for himself or some one else, and by no rule of law could he be the agent of the defendant in such a transaction.   The evidence of Jay tended to prove that Parker, the professed agent of the defendant, set deliberately to work to have his principal issue a policy of insurance upon the life of a man who he knew had diseases which debarred him from the benefits of insurance in the defendant company.

The plaintiff's counsel cited here and relied on the cases of *Burgeron v. Ins. Co.,* 111 N. C., 45, and *Follette v. Accident Asso.,* 110 N. C., 377; but we think that there is a substantial difference in the nature of the facts in those cases and the facts of this case.   In those cases there was no actual fraud charged by the company upon either the insured or the agent. In the first cited case it was stipulated in the policy that the insurance should be void if the building stood on leased ground and it appeared that that fact was known to both the agent and the insured, but that the agent said it made no difference.   Although the company itself had no actual notice of the facts, it was held that in such a case the company had implied knowledge of the acts of the agent and that it had

waived the condition in the policy or was estoppped by the act of its agency. No bad faith was charged and the irregularity was treated in the opinion of the Court as a mistake or blunder of the agent, and for which the insured should not be made to suffer. In the other case the local agent who had knowledge of the deafness of the applicant sent on to the company the application in which the applicant had stated that he had never had any bodily or mental infirmity except an attack of rheumatism. The knowledge of the agent of the deafness of the insured was held to be impliedly known to the principal, and that the company had waived the condition.

In the case before the Court, the evidence, a part of it, went to show a conspiracy to cheat and to defraud the company, and that the leader of the conspiracy was the professed agent of the company. This case does not fall within any of our decisions in reference to the largely increased powers of local agents of insurance companies, growing out of changed business conditions on their part. The view of the law which the plaintiff's counsel contend that we should take in this case would result in the destruction of all business which is conducted through the means of agency, and in the overturning of one of the chief purposes for which all agencies are allowed to be constituted—the faithful performance of duty by the agent and the protection of the interests of the principal, committed to his charge.

We stand by the decisions in *Burgeron v. Ins. Company* and *Follette v. Accident Association, supra,* but we can go no further in that direction. This view of the case makes it unnecessary to consider the other questions involved. There was error and there must be a new trial. The defendant must return the premium before he will be allowed to enter upon the new trial.

New trial.