## MUTUAL RESERVE FUND LIFE ASS'N v. AUSTIN.

### (Circuit Court of Appeals, First Circuit. December 13, 1905.)

### No. 587.

INSURANCE—LIFE POLICY—CONSTRUCTION OF "INCONTESTABLE" CLAUSE.

A provision in a life insurance policy that, "if this policy of insurance shall have been in continuous force for three years from its date, it shall thereafter be incontestable, except for nonpayment of premiums as herein provided, or for misstatement of the age of the member in the application therefor," must be given effect in accordance with the expressed intention of the parties as covering all grounds for contest not expressly excepted therein. Where such a policy was delivered and accepted, and retained for more than three years, and until the death of the insured, during which time all premiums were paid, and it was treated by both parties as a valid and subsisting contract, it was in "continuous force" during such time, notwithstanding a further provision that it should not take effect or be in force until delivered to the insured in his lifetime and while in good health, nor unless the first payment was made while he was also in good health, which condition was not complied with; the applicant not being in fact in good health at the time of delivery and the payment of the first premium. Such a condition is of no higher effect than any warranty, which also creates a condition precedent to any obligation on the part of the company.

In Error to the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 132 Fed. 555.

Victor J. Loring, for plaintiff in error.

Joseph Bennett, for defendant in error.

Before LOWELL, Circuit Judge, and ALDRICH and BROWN, District Judges.

BROWN, District Judge. The policies of insurance upon the life of Jonathan W. Austin contain the following clause:

"XIV. If this policy of insurance shall have been in continuous force for three years from its date, it shall thereafter be incontestable except for nonpayment of premiums as herein provided or for misstatement of the age of the member in the application therefor, subject to the provisions hereof."

The insurance company contends that this so-called "incontestable clause" never took effect, for the reason that the policy had not been

"in continuous force" for three years from its date. The application contains the following language:

"The applicant further agrees * * * that under no circumstances shall the insurance hereby applied for be in force until payment in cash of the first payment, while the applicant is in good health, and delivery of the policy to the applicant in person during his lifetime and while in good health."

A further provision in the policy is:

"II. This contract shall not take effect until this policy is delivered to the member in person, during his lifetime and while in good health, nor until the first payment is paid in cash hereon while said member is also in good health. * * *"

It is established as a fact that Austin was not in good health within the meaning of the applications and policies, either when the applications were made or when the policies were delivered, or when the first premiums were paid. It is further established that the policies were delivered to Austin on April 14, 1897;—that he paid the first payment and all premiums as stipulated in each policy until his death on October 5, 1902. The company does not rely upon false or fraudulent representations, and disavows an intention to avoid its policies for breach of warranties. It contends that the good health of the applicant was a condition precedent, and that no contractual relation, therefore, ever existed between the applicant and the defendant below.

According to this contention, the agreement that the policy, after three years from its date, shall be incontestable, save for nonpayment of premiums or misstatement of age, is itself a conditional agreement, conditional upon the insurance having been "in force"; and the insurance was not in force because, at the time of the delivery of the policy, the assured was not in good health.

Upon the view that the expression "in force" implies that the contract of insurance shall have been of full and binding obligation during three years, the clause may well be regarded as self-destructive and deceptive. If we are to read it to mean that, if the policy shall have been incontestable for three years, it shall thereafter be incontestable, it is practically meaningless.

During the first three years the policy is contestable upon any one of the express warranties, or upon any one of the conditions inserted by the insurance company for its benefit. These warranties and conditions all relate to the inception of the obligation of the insurance company. It was agreed by the assured that, if any condition or agreement should not be fulfilled, the policy should be null and void. It is the purpose of an ordinary incontestable clause to annul all warranties and conditions that might defeat the rights of the assured. It is said, however, that this is not the ordinary incontestable clause, but a conditional clause novel in character.

An agreement that a policy shall be incontestable is of no significance unless we assume the existence of grounds for contest in the terms of the contract, or in extrinsic facts. If the policy is not to be regarded as in force during the first three years, provided that after three years the company is able to show a breach of warranty or of conditions, then this incontestable clause is of no value, save as a de-

ceptive inducement to those seeking insurance. A construction which renders the clause self-destructive and of no avail to the assured, is to be avoided. "Parties to a contract are always to be supposed to have intended something, rather than nothing, by what they have said." We think it clear that the clause contemplates that a policy may have been "in continuous force" for three years, even though the insurance company then had good grounds for avoiding it for the reason that a condition precedent had not been fulfilled. The words "in continuous force for three years" distinguish between policies which mature by death, or otherwise terminate within three years, and policies which do not so mature or terminate. Continuance of life for three years removes certain risks, and affords a reasonable period for the detection of fraud. It has become quite customary for insurance companies to waive warranties and conditions after two or three years. In construing this incontestable clause, we must not lose sight of the fact that it relates, not to the risk at the date of the policy, but at a period three years later, and to a risk that is different in character.

The agreement concerning the original assumption of risk is distinct and independent from the agreement that the policy, after it has been outstanding three years in the possession of the assured, shall be incontestable. The document contains two separate agreements by the company:

(1) To insure conditionally for three years. (2) To relinquish defenses after three years. Each of these forms a part of the consideration for which the assured pays his money. They relate to distinct subject-matter, to different dates.

To adopt a construction which includes in the agreement to relinquish defenses all the warranties and conditions of the first undertaking is to destroy the second agreement to relinquish defenses. To avoid the reductio ad absurdum which follows, if we interpret the words "in force" to mean of full obligation, counsel contend that the incontestable clause is not a mere pretense, but that it has real significance.

It is conceded that by the incontestable clause the insurance company is precluded from setting up breaches of warranty. Upon the brief for the company it is said:

"The company offers in its policy, in so far as the correctness of the answers made in the application are concerned, to put a limit to the time in which it can enforce a strict breach of warranty, and defeat recovery, by reason of the falsity of any answer, whether made in good faith or with knowledge of its falsity or not."

But, if the expression "in continuous force" means of binding obligation, we do not see that the company, by its incontestable clause, is precluded from a defense for any breach of warranty. The mere concession of this point by counsel does not relieve us from the difficulty of finding a sound legal basis for a construction which would make the so-called "incontestable clause" cut out the defense of breaches of conditions precedent created by clauses of warranty, and let in the defense of a breach of a condition precedent created by the clause concerning delivery in good health. They must both stand upon the

same ground. We must adopt a construction based upon a consistent application of the same rule.

A distinction is drawn between the statements in the application, which are made warranties, and the condition precedent, as to the delivery of the policy while in good health; but this distinction does not affect the meaning of the words "in force," for each of the numerous warranties also creates a condition precedent to the incurring of obligation by the company. Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366; Filley v. Pope, 115 U. S. 213, 6 Sup. Ct. 19, 29 L. Ed. 372; Davison v. Von Lingen, 113 U. S. 40, 5 Sup. Ct. 346, 28 L. Ed. 885; Sweeney v. Metropolitan Life Ins. Co., 19 R. I. 171, 36 Atl. 9, 38 L. R. A. 297, 61 Am. St. Rep. 751. The effect of a stipulation amounting to a waranty is to render the accuracy of the state of facts alleged in it a condition precedent of the insurer's responsibility, and he becomes bound only "if" and "in the event that" they are literally as the assured had thus represented them to be. Angell on Fire & Life Insurance, § 307.

The term "incontestable" is of great breadth. It is the "policy" which is to be incontestable. We think the language broad enough to cover all grounds for contest not specially excepted in that clause. The word "policy" may well be taken to mean a formal document delivered by the company, and containing evidence of an obligation to pay. Such a document so delivered is ordinarily contestable, with reference to questions arising in connection with its delivery and payment of the first premium, as well as with reference to statements contained in the application.

In Carpenter v. Providence Washington Insurance Co., 16 Pet. 495, 509, 510, 10 L. Ed. 1044, Mr. Justice Story said:

"It is not true that because a policy is procured by misrepresentation of material facts it is therefore to be treated, in the sense of the law, as utterly void ab initio. It is merely voidable, and may be avoided by the underwriters upon due proof of the facts; but until so avoided it must be treated for all practical purposes as a subsisting policy. In this very case the policy has never, to this very day, been avoided, or surrendered to the company. It is still held by the assured, and he may, if he pleases, bring an action thereon to-morrow; and, unless the underwriters should at the trial prove the misrepresentation, he will be entitled to recover. * * *

"Indeed, we are not prepared to say that the court might not have gone farther, and have held that a policy—existing and in the hands of the insured, and not utterly void upon its very face, without any reference whatever to any extrinsic facts—should have been notified to the underwriters, even although by proofs, afforded by such extrinsic facts, it might be held in its very origin and concoction a nullity."

Upon the face of each policy in suit it was not invalid. Until contested by the company, it had such force as upon its face it purported to have. All of the requirements of the company upon the assured were met by the payment of premiums. The policy was outstanding as a certificate of membership. If a policy utterly void upon proof of extrinsic facts may be regarded as "other insurance," so this policy, until either avoided or proven null and void in its origin, may be regarded as a policy in continuous force.

The argument that the policy was not in continuous force is predica-

142 F.—26

ted upon an extrinsic fact not appearing upon the face of the policy, to wit, the fact that the assured was not in good health at the date of delivery of the policy. In setting up, or even in relying upon, this extrinsic fact, the company is contesting its policy as evidence of its obligation. If the company is at liberty to set up this fact after the lapse of more than 5 years, it is equally at liberty to set it up after the lapse of 40 years. Instead of being an incontestable policy, if we adopt the defendant's argument, the policy is always contestable.

All the conditions and warranties appearing upon the various documents constituting the contract were for the benefit of the insurer.

To free the mind of the applicant for life insurance from apprehension raised by these numerous conditions and warranties, and to assure him that his beneficiary shall have a clear and incontestable right, is the ostensible purpose of the incontestable clause. Read as an independent clause, it is a strong inducement to the applicant. A construction which reads into it as permanent provisions the very conditions which apparently it was designed to terminate makes it not only inoperative, but exceedingly deceptive, for, while the clause would serve as an inducement to the applicant and remove his unwillingness to accept a policy containing many conditions upon which it might be defeated, the contract would still hold him rigidly to each and every warranty and condition contained in it. Such a result may be avoided by construing the incontestable clause to mean that if the policy does not mature or terminate within three years, but during that time is outstanding in the hands of the assured, and is not utterly void on its face, and is not avoided by the company, but is acted upon by both parties as a subsisting contract, it is "in continuous force" within the true meaning of the clause.

The judgment of the Circuit Court is affirmed, with interest, and the defendant in error recovers costs in this court.