## AMERICAN TRUST COMPANY v. LIFE INSURANCE COMPANY OF VIRGINIA.

(Filed 23 May, 1917.)

**1. Partnership—Profits—Principal and Agent—Compensation.**

Where the sharing in the profits of a business arrangement is only a method employed in determining the compensation one is to receive for services rendered another, it falls within the exception of the rule that the test of whether a partnership exists is the sharing of profits by the parties.

**2. Insurance, Life—Corporations—Officers — Insurable Interests — Principal and Agent—Statutes.**

Where the manager of a concern employs another to take charge of its insurance department, its soliciting agents, etc., by which a profitable businss is built up, upon an agreement that the one producing the business is to receive as compensation a certain part of the profits, it is not conclusive evidence of a partnership between the two, and the corporation has an insurable interest in the life of the manager of its insurance agency, and expressly so under the provisions of our statute, chapter 507, Public Laws 1909.

**3. Insurance, Life—Delivery of Policy—Health of Insured—Duty of Insurer.**

If any time elapses between the application for policy of life insurance and its issuance, it is the duty of the insurer to make inquiry when the policy is delivered as to the condition of the health of the insured, and upon its failure to do so the delivery is conclusive that the policy contract is completed, and binds the parties to the mutual obligations therein imposed upon them.

**4. Same—Noncontestable Clause—Defenses.**

A clause in a policy of life insurance making it incontestable at the end of a year covers the defense of the alleged bad health of the insured at the time of its delivery, and also that of false and fraudulent statements alleged to have been made by the insured in his application.

**5. Same—Exceptions.**

Where a policy of life insurance has been issued containing a clause making it noncontestable after the expiration of a year, except for nonpayment of premiums, after that period no defense is available to the insurer, in an action upon the policy, excepting the nonpayment of the premium, as therein stated.

**6. Insurance, Life—Noncontestable Clause—Insurer's Benefit.**

The noncontestable clause in a life insurance policy is for the benefit of the insurer in increasing its business by assurance that after the maturity of the policy, usually upon the death of the insured, its collection will not be subject to the uncertainty and delay of litigation, or questioned except as to matters therein stated—in this case, the nonpayment of premiums.

**7. Insurance, Life—Noncontestable Clause—Breach by Insurer—Rights of Insured.**

Upon refusal of the life insurer to perform its part of a policy contract, and its notification thereof to the insured, the latter may elect to consider the policy at an end and recover its just value; or he may sue in equity to have the policy declared in force, or tender the premiums and treat the policy as in force and recover the amount payable according to its terms at maturity.

**8. Same—Suits—Equity—Cancellation—Consent—Validity of Policy.**

Where a policy of life insurance containing a clause making it noncontestable after the expiration of a year, except for nonpayment of premium, has been delivered and the premium paid therefor, an attempt by the insurer within that time, upon notification to the insured, to cancel the policy with tender of repayment of the premium upon a different ground than that stated in the clause, but not consented to or accepted by the latter, is a breach of the contract by the former; and it is necessary for the insurer, within the stated time, to bring suit in equity for the cancellation of the policy, or it will remain binding and enforcible upon the insurer's death.

CIVIL ACTION, tried before *Cline, J.,* at the February Term, 1917, of MECKLENBURG.

This is an action to recover $10,000, the amount of a policy of insurance issued by the defendant upon the life of Harvey Lambeth, in favor of the plaintiff, on 4 March, 1913.

The policy contained the following clauses, among others: "This policy shall not *take effect* until the first premium is paid, or unless on the date of said payment the insured is alive and in *sound health.*"

*Incontestability.*—The incontestable clause provides: "This policy shall be incontestable after one year from its date, except for nonpayment of premium."

Within twelve months from the date of the policy the defendant notified the plaintiff that it elected to cancel the policy, and tendered a return of the first premium on the ground that it had discovered facts which in its opinion rendered the policy void, but it refused, upon the request of the plaintiff, to state what the facts were.

The plaintiff declined to accept the premium and elected to treat the policy as still in force.

There is no provision in the policy giving the defendant the right to cancel it.

The plaintiff thereafter tendered the premiums as they became due, which the defendant refused to receive, and the insured died on or about 7 February, 1915.

No action was brought by the defendant to have the policy canceled.

The defendant offered evidence tending to prove that the insured was

not in good health when the policy was delivered, and that there were false representations in the application for the policy.

His Honor instructed the jury if they found the facts to be as testified to by the witness to answer the issue in favor of the plaintiff, and the defendant excepted.

There was a verdict and judgment for the plaintiff, and the defendant appealed.

*Morrison & Dockery and Tillett & Guthrie for plaintiff.*
*Stewart & McRae and Cansler & Cansler for defendant.*

ALLEN, J. The principal contentions of the defendant are:

1. That the plaintiff and the insured were partners when the policy was issued, and as such the plaintiff had no insurable interest in the life of the insured, and that, therefore, the contract of insurance is a wagering or gambling contract.

2. That the insured was not in good health at the time of the delivery of the policy of insurance, and that, therefore, the contract of insurance was never in force under the terms of the policy.

3. That the defendant rescinded the contract of insurance within twelve months after it was issued and tendered a return of the first premium, and that this being so, the incontestable clause does not prevent the defendant from alleging and proving false statements in the application for insurance and fraud in procuring its issue.

The plaintiff, on the other hand, contends:

1. That the insured was not a partner, but an agent and officer of the plaintiff, and that it had an insurable interest in his life.

2. That there is no evidence that the insured was not in good health at the time of the delivery of the policy and no evidence of false statements or fraud.

3. That the defendant had no right to cancel the policy of insurance, and did not do so, and that the same was in force at the death of the insured.

4. That the incontestable clause in the policy prevents the defendant from relying upon the fact, if it existed, that the insured was not in good health at the time of the delivery of the policy or that false and fraudulent statements were made in the application.

There is authority for the position that the incontestable clause in a policy of insurance covers every defense except that there was no insurable interest at the time of the issuing of the policy (5 Elliott on Contracts, sec. 4077), although the trend of modern authority is that the clause, when it takes effect within a reasonable time after the issue of the policy and not from date, cuts off all defenses except those specially allowed by the clause itself.

"The modern rule is that a life insurance policy containing a provision that it shall be incontestable after a specified time cannot be contested by the insurer on any ground not excepted in that provision. *William v. St. Louis Life Ins. Co.,* 189 Mo., 70; *Massachusetts Ben. Life Assn. v. Robinson,* 104 Ga., 256; *Northwestern Life Ins. Co. v. Montgomery,* 116 Ga., 799; *Wright v. Mutual Ben. Life Assn.,* 118 N. Y., 237; *Patterson v. Natural Premium Mut. Life Ins. Co.,* 100 Wis., 118; *Mutual Reserve Fund Life Assn. v. Austin,* 142 Fed., 398; *Murray v. State Mut. Life Ins. Co.,* 22 R. I., 524; *Clement v. New York Life Ins. Co.,* 101 Tenn., 22; *Citizens Life Ins. Co. v. McClure,* 138 Ky., 138; 25 Cyc., 875." *Harris v. Ins. Co.,* Ann. Cases, 1914 C., 650.

Accepting it, however, as valid defense when established by proof, although not excepted in the clause, it is one that should not be favored when invoked by the insurer, when, as in this case, the policy was issued with full knowledge of the facts, because it convicts the insurance company of having issued a policy invalid in its inception and contrary to law, and permits it to take advantage of its own wrong.

It is not, however, necessary for us to decide whether the incontestable clause covers this defense, because it seems clear to us that the insured was not a partner of the plaintiff.

The uncontradicted evidence showing the relationship between the plaintiff and the insured is as follows:

W. H. Wood testified: "I have been secretary and treasurer of the American Trust Company since its organization, about fifteen years ago. In 1912 Harvey A. Lambeth was and had been associated with the company, as manager of the insurance department, since 1902. He was also a director in the company. We had a verbal contract with him, made by Mr. F. C. Abbott, who was the president, the vice-president, and myself as secretary and treasurer, providing that he should organize an insurance department and act as manager of it, receiving one-half of the net profits of that department as his compensation. The department belonged to the American Trust Company. He served continuously as active manager from his appointment until during 1912. During February and March, 1912, he was manager of the insurance department and director in the bank. He directed the operations of the business and was the head of it. He went out to solicit insurance and got it and brought it back. At times I saw the applications, and was coöperating with him personally, at times, in getting the business. He frequently conferred with me in getting insurance. He had charge of a large business, was principal producer of practically all the business of the insurance department. . . . The insurance department was a success from the time it was organized. He spent all his time in the insurance department. Had charge of all the force, controlled their work and their salaries. He

36—173

worked incessantly at the business. He had charge of employing and discharging all employees in the insurance department and fixed their salaries. The plaintiff had subagents all over this State and in South Carolina, and he looked after them."

There was also evidence that the plaintiff received as its share of the profits of the business conducted by the insured $7,500 per year.

The ordinary test of a partnership, as the defendant contends, is sharing in the profits, but the evidence brings this case within the well recognized exception to the rule, that there is no partnership if sharing in the profits is a mere means of ascertaining and determining the compensation for the services rendered. *Lance v. Butler,* 135 N. C., 422, and cases cited.

In this case the Court says: "In *Kootz v. Tuvain,* 118 N. C., 393, it is held that while an agreement to share profits, *as such,* is one of the tests of partnership, an agreement to receive part of the profits for his services and attention, as a means only of ascertaining the compensation, does not create a partnership."

The evidence shows that the plaintiff established an insurance department; that the insured was a director of the plaintiff, was the manager of this department, and, therefore, both an officer and an agent, and received half the profits as compensation for his services, and this brings the parties directly within the provisions of chapter 507 of the Laws of 1909, which reads as follows: "And whenever there shall devolve upon any officer or agent of a corporation duties and responsibilities of such nature as that a financial loss would result to the corporation from the death and consequent loss of the services of such officer or agent, then in such cases the corporation shall be deemed to have an insurable interest in the life of such officer or agent, and shall have the power to insure the life of such officer or agent for its benefit."

This statute was passed in consequence of the opinion in *Victor v. Louise Mills,* 148 N. C., 107, and permits the taking out of a policy of insurance by a corporation upon the life of an officer or agent whose duties and responsibilities are of such nature that a financial loss would result to the corporation from his death, and the uncontradicted evidence conforms to all of its provisions.

The case of *Powell v. Ins. Co.,* 123 N. C., 103, relied on by the defendant, is not, therefore, in point.

Nor do we agree to the position that the defendant can avail itself of the plea that the insured was not in good health at the time of the delivery of the policy, and that for this reason, under the terms of the policy the contract never became operative.

If any length of time elapses between the making of the application and the issuing of the policy it is the duty of the defendant to make in-

quiry when the policy is delivered as to the condition of the health of the insured; and if it fails to do so, the delivery is conclusive against the defendant as to the completion of the contract.

It was so decided in *Grier v. Ins. Co.,* 132 N. C., 546, in which the Court said: "When the policy is not only issued, but delivered, its delivery (in the absence of fraud) is conclusive that the contract is completed (*Ray v. Ins. Co.,* 126 N. C., 166), and is an acknowledgment of payment during continuance in good health. If the agent had not delivered the policy, whether the circumstances would have justified the withholding of the delivery so as to release the company from responsibility is not a matter before us. He did deliver it, and with full opportunity to see the insured and with a suggestion that he do so, and there is no allegation of fraud and collusion, as in *Sprinkle v. Indemnity Co.,* 124 N. C., 405. The delivery of the policy closed the contract like the delivery of any other deed, and the preliminary provisions of the application for withholding thereof ceased to be of any force. In *Kendrick's case, supra,* the money was not paid till after a lingering illness and on the very day of the death, and then by a friend; but it was held that the delivery of the policy was conclusive as to the contract being complete.

Numerous authorities can be cited in support of what is here said, but the matter has been sufficiently elaborated in *Kendrick v. Ins. Co.,* 124 N. C., 315; 70 Am. St. Rep., 592. To same purport, *Life Assn. v. Lindley,* (Texas) 68 S. W., 695; *Indemnity Assn. v. Grogan,* (Ky.) 52 S. W., 959; *Ins. Co. v. Koehlar,* 63 Ill. App., 188; *Ins. Co. v. Schlink,* 175 Ill., 284; *Ins. Co. v. Quinn,* 41 N. Y. Supp., 1060; *McElroy v. Ins. Co.,* 94 Fed., 990. In *Life Assn. v. Dindley* and *Indemnity Co. v. Grogan* the facts were identical almost with those in this case. . . . The actual delivery of the policy concludes the contract, in the absence of fraud."

It is also held that the incontestable clause covers this defense of the bad health of the insured at the time of the delivery of the policy (*Wright v. Ins. Co.,* 43 Hun., 65, affirmed in *Wright v. Ins. Co.,* 118 N. Y., 237; *Clement v. Ins. Co.,* 101 Tenn., 22; *Life Assn. v. Austin,* 142 Fed., 398; *Dibble v. Ins. Co.,* 179 Pa., 171; *Life Ins. Co. v. Briggs,* 156 S. W., 909; *Moher v. Ins. Co.,* 78 Atl., 554; *Patterson v. Ins. Co.,* 100 Wis., 118), as well as false and fraudulent statements in the application and the policy (*Dibble v. Ins. Co.,* 149 Pa., 171; *Wright v. Ins. Co.,* 118 N. Y., 237; *Patterson v. Ins. Co.,* 100 Wis., 118; *Benefit Assn. v. Robinson,* 104, Ga., 256; *Ins. Co. v. Briggs,* 156 S. W., 909; *Murry v. Ins. Co.,* 48 Atl., 800, and many other cases); and if this is not the legal effect of the clause, why insert it, except for the purpose of deceiving and misleading the insured?

As said in *Patterson v. Ins. Co., supra,* while discussing the effect of the incontestable clause on the defense of false statements and fradulent concealment: "If this clause be not altogether a glittering generality, put in for no purpose except to induce men to insure, it would seem that it must cover such misstatements or omissions as are here alleged."

This brings us to the consideration of the incontestable clause in the policy and of the effort of the defendant to cancel the policy within one year from its delivery.

The authorities are practically uniform in holding that an incontestable clause, which gives a reasonable time for the insurance company to make investigation, is valid, and that it means what it says, and that is that after the time named in the clause has expired no defense can be set up against the collection of the policy, unless it comes within the excepted classes named in the clause itself, which in this case would be the nonpayment of premiums. See cases collected in note to *Harris v. Ins. Co.,* Ann. Cases, 1914 C., 652.

This clause, which has been generally adopted by the insurance companies, is not primarily for the benefit of the insured, but for the benefit of the insurance company itself.

It was adopted because, in many instances, insurance is taken out for the benefit of the wife and children, and frequently the hope of a reasonable income after death to those dependent upon him was defeated by defenses which could not have been sustained if the insured had been alive.

This deterred many from taking out insurance, and the companies adopted the incontestable clause for the purpose of increasing their business.

"No more tempting provision to an applicant could be introduced into a policy of life insurance than this one which guaranteed to the applicant that his policy should not be contested after the expiration of one year, provided the premiums were paid.

"Premiums upon life policies are often paid at a great sacrifice, and one of the most disturbing and unsatisfactory features of the insurance contract is the fact that, after these sacrifices and payments have been made for a number of years, and the insured has died, so that his testimony and perhaps that of others has been rendered unavailable by the lapse of time and the occurrence of death, instead of receiving the promised reward, the beneficiary will be met with a contest and a lawsuit to determine whether the insurance ever had any validity or force. Hence it has become an almost universal practice with insurance companies to provide against any contest or forfeiture of their policies after a certain length of time, greater in some cases and less in others.

"The provision in this case is very broad in its terms. There is only one condition upon which the validity of the policy can be questioned

after the lapse of a year, and that is the nonpayment of premiums. The meaning of the provision is that if the premiums are paid the liability shall be absolute under the policy, and that no question shall be made of its original validity. No reasonable construction can be placed upon such provision other than that the company reserves to itself the right to ascertain all the facts and matters material to its risk, and the validity of their contract for one year, and if within that time it does not ascertain all the facts, and does not cancel and rescind the contract, it may do so afterward upon any ground then in existence.

"The practical and intended effect of the stipulation is to create a short statute of limitation in favor of the insured, within which limited period the insurer must, if ever, test the validity of the policy." *Clement v. Ins. Co.,* 101 Tenn., 22.

"It is in the nature of and serves a similar purpose as statutes of limitations and repose, the wisdom of which is apparent to all reasonable minds. . . . No doubt, the defendant held it out as an inducement to insurance by removing the hesitation in the minds of many prudent men against paying ill-afforded premiums for a series of years, and, in the end, and after the payment of premiums, the death of the insured, and the loss of his and the testimony of others, the claimant, instead of receiving the promised insurance, is met by an expensive lawsuit to determine that the insurance which the deceased has been paying for through many years has not, and never had, an existence except in name. While fraud is obnoxious, and should justly vitiate all contracts, the courts should exercise care that fraud and imposition should not be successful in annulling an agreement to the effect that if cause be not found and charged within a reasonable and specific time, establishing the invalidity of the contract of insurance, it should thereafter be treated as valid." *Wright v. The Mutual Benefit Life Assn.,* 118 N. Y., 237.

We, therefore, conclude that the policy of insurance was valid in its inception and that the incontestable clause, if in force, would prevent the defendant from showing that the insured was not in good health when the policy was delivered, or that there was fraud in procuring the issuing of the policy.

We must then determine whether the policy was in force at the expiration of one year from its delivery.

If it was, having concluded that the plaintiff had an insurable interest in the life of the insured and that the incontestable clause covers the defense of bad health at the time of the delivery of the policy and of fraud in procuring it, it would necessarily follow that the plaintiff is entitled to recover, and that there was no error in instructing the jury

. to answer the issues in favor of the plaintiff, and, on the other hand, if the policy was not in force one year from its delivery these defenses are open to the defendant.

A policy of insurance is a contract, and is to be interpreted as other contracts (14 R. C. L., 925; *Ins. Co. v. Kearney,* 180 U. S., 132), except that if there are doubtful and ambiguous words and phrases they are to be construed in favor of the insured (Vance Ins., 430; *Bank v. Ins. Co.,* 95 U. S., 673; *Kendrick v. Ins. Co.,* 124 N. C., 320; *Gazzam v. Ins. Co.,* 155 N. C., 338); and "if there is a reasonable doubt as to the extent of the application of the 'incontestable clause,' it must be solved in favor of the beneficiary." *Mareck v. Life Assn.,* 62 Minn., 39; *Royal Circle v. Achterrath,* 204 Ill., 549.

It takes two to make a contract, and while one may cause a breach, it takes two to rescind or cancel it, unless there is some provision in the contract itself authorizing its rescission or cancellation at the option of one of the parties, which is not a feature of the policy in this case.

As said by *Justice Walker* in *Edwards v. Proctor, ante,* 41: "When parties enter into a contract for the performance of some act in the future, they impliedly promise that in the meantime neither will do anything to the harm or prejudice of the other inconsistent with the contractual relation they have assumed. The promisee it also has been said (and this seems to be the better reason), has an inchoate right to the performance of the bargain, which becomes complete when the time for such performance has arrived, and, meanwhile, he has a right to have the contract kept open as a subsisting and effective one, as its unimpaired and unimpeached efficacy may be essential to his interests. Clark on Contracts (1904), pp. 445, 447; *Frost v. Knight,* L. R., 7 Exch., 111."

"A policy is a contract between the insurer and the insured. Nothing in its nature implies that one party may at any time declare it ended." *Rothschild v. Ins. Co.,* 74 Mo., 41.

When the policy was issued mutual obligations were undertaken by the plaintiff and the defendant, the plaintiff agreeing to pay the premiums and the defendant agreeing to pay the amount of the policy upon the death of the insured; and when the defendant notified the plaintiff that it would cancel the policy, and tendered the return of the first premium, it was guilty of a breach, usually designated as a breach by renunciation. 3 Page Cont., sec. 1436.

One year is given to the defendant to make inquiry and investigation as to the health of the insured, and as to the statements made in the application and the policy as an inducement to the contract.

Within this time, if the defendant refused to perform its part of the contract, and so notified the insured, three remedies are given to the plaintiff:

"(1) He may elect to consider the policy at an end and recover its just value. (2) He may sue in equity to have the policy declared in force. (3). He may tender the premiums and treat the policy as in force and recover the amount payable on it at maturity." 14 R. C. L., 1004; *Day v. Ins. Co.,* 29 Am. R., 693; *Ins. Co. v. McCormick,* 65 Am. R., 393.

The insurance company also has the right, if .it concludes that the policy has been improperly procured, to institute an action for the cancellation of the policy within the year.

"The insured may maintain a suit in equity in a proper case to rescind or cancel the contract for fraud on the part of the company or its agent, or for breach of contract. In like manner the company may maintain a suit in equity to cancel a policy because of fraud upon the part of the insured or the beneficiary, as the case may be, or because the policy is a wager policy by reason of want of insurable interest." 25 Cyc., 788; *French v. Connely,* 145 Eng. Report (reprint), 933; *Whittingham v. Thornbourgh,* 23 Eng. Report (reprint), 734; *Asso. v. Palmer,* 53 Eng. Report, 768; *Ins. Co. v. Dick,* 114 Mich., 337.

The two cases relied on by the defendant (*Ins. Co. v. Bailey,* 13 Wall., 616; *Cable v. Ins. Co.,* 191 U. S., 288) to sustain the position that the insurance company has no right to bring an action to have the policy canceled, are not in point, because in both of these cases the right was denied upon the ground that an action at law was pending upon the policy, the insured having died, and it was held that the insurance company did not have the right to go into a court of equity, as it could set up the defense in a court of law.

It follows, therefore, that the conduct of the defendant in notifying the insured that it would cancel the policy and in tendering the first premium which had been paid, did not rescind or cancel the contract, as the plaintiff did not consent thereto, and amounted to no more than a breach, and that the remedy of the defendant was to institute an action for cancellation within the year, and as it did not do so the policy was in force at the expiration of the year.

This is also in accordance with the authorities holding that if the defendant wishes to contest and to avoid the payment of the policy and the force of the incontestable clause, it must take affirmative action within the time limited by the policy.

In *Ins. Company v. McGinnis,* 45 L. R. A. (n. s.), 197, the Court said: "It seems to be a well recognized principle of insurance law that a provision in a contract of insurance limiting the time in which the insurer may take advantage of certain facts that might otherwise constitute a good defense to its liability on such contract is valid, and precludes every defense excepted in the provision itself. It also seems to

be generally held that such a clause precludes the defense of fraud as well as other defenses, and that it is not valid on the theory that it is against public policy, provided the time in which the defenses must be made is not unreasonably short. An examination of the following cases will show that the holding of the courts of this country has been almost universally that *every defense* to a policy of insurance embraced within the terms of the 'incontestable clause' is completely lost to the insurer, if it fails to make the defense or *take affirmative action within the time limited by the policy."*

The language used in *Murray v. Ins. Co.,* 53 L. R. A. (R. I.), 743, speaking of the incontestable clause, is that "The practical and evidently the intended effect of the stipulation in question was to create a short statute of limitations in favor of the insured, within which limited period the insurer must, if ever, *test the validity of the policy"* (Italics ours) ; and this is copied and adopted in *Clemens v. Ins. Co.,* 70 A. S. R., 653.

The meaning of the terms, "take affirmative action," "test the validity of the policy," if in doubt, is made clear by the decision in *Wright v. Benefit Assn.,* 43 Hun., 65, which was affirmed in 118 N. Y., 237, in which the Court, speakng of a policy which became incontestable after two years, says: "Its effect is not to prevent the insurer from annulling the contract upon the ground of the fraudulent representations of the insured, provided *an action is brought* in the lifetime of the insured and *within two years from the date of the policy,"* and this was quoted and approved in *Ins. Co. v. Robinson,* 42 L. R. A. (Ga.), 269.

The case of *Powell v. Ins. Co.,* 153 N. C., 128, is not in conflict with these views.

In that case the defendant denied the delivery of the policy, and it was held that if the policy was not delivered and the contract was never in force, that the incontestable clause would fall with the other provisions of the contract.

We are, therefore, of opinion, as the plaintiff had an insurable interest in the life of the insured when the policy was issued, and as no action was brought by the defendant within one year from the date of the policy to have the contract of insurance canceled or rescinded, that the incontestable clause was in force at the death of the insured, and that the defendant is precluded thereby from relying on the defenses set up.

We have dealt with the case upon the theory that there is some evidence to support the defense relied on, but upon an examination of the record it appears to us that the insured acted in good faith, and, while there is some evidence that he had an incurable disease at the time of the delivery of the policy, that he had no knowledge of it, and that he was in apparent good health.

No error.