ALPHONSO ALLICK, Appellant, *v.* COLUMBIAN PROTECTIVE ASSOCIATION, Respondent.

First Department, June 1, 1945.

*Bernard Jacobson* of counsel (*Daniel & Bernard Jacobson,* attorneys), for appellant.

*Eli T. Scott* of counsel (*Gould & Wilkie,* attorneys), for respondent.

CALLAHAN, J. Plaintiff sues as the beneficiary named in an industrial insurance policy issued on the life of Sylvia Allick. The application for the policy was signed by the insured on October 5, 1940. It contained a provision that the insurance applied for was not to be in force until the payment in advance of the premium and the delivery of the policy to the insured while in good health and free from all injury. The policy was delivered to insured on October 21, 1940, without prior physical examination. It remained with her up to the time of her death sixteen months later, during which period sixteen monthly premiums were accepted by the company.

As required by law, the policy contained a clause reading as follows: '' Incontestability — Except for non-payment of premiums this policy shall be incontestable after it has been in force for one full year from its date of issue within the lifetime of the insured. No statement made by the applicant for insurance not included herein shall avoid the policy or be used in any legal proceeding hereunder.''

Defendant has been successful in resisting payment of this policy up to the present, because of the breach of the good health provisions contained in the application. It appears that four days before the delivery of the policy the insured suffered an attack of a serious disease known as acute rheumatic heart, for which she received treatment at a hospital. Concededly, insured was not suffering from this disease when she signed the application, and it is not contended that she made any false statements therein. However, no notice of the onset of the disease had been conveyed to the insurance company prior to the delivery of the policy, or up to the time of insured's death.

The gist of the decisions of the Municipal Court and Appellate Term of the Supreme Court, refusing recovery on this policy, is that, because of the breach of the good health conditions, the policy, including the incontestability clause, never became effective. These decisions rest on the application of certain general principles of contract law relating to breaches of conditions precedent, which may be summarized as follows: (1) Agreements

contained in applications for insurance are deemed to have binding force (*Drilling* v. *New York Life Ins. Co.*, 234 N. Y. 234); (2) obligations under contracts of insurance cannot be affected by provisions in the policy until such policy has taken effect and become a binding contract (*Whipple* v. *Prudential Ins. Co.*, 222 N. Y. 39); and (3) violation of a material condition precedent contained in an application for insurance may prevent a policy from going into effect. (*Glickman* v. *New York Life Ins. Co.*, 291 N. Y. 45.)

But none of the principles so stated and authenticated are decisive of the issue presented here, which relates solely to the availability to an insurance company of a defense of breach of condition precedent after the company has accepted premiums beyond the period of contestability. None of the cases above referred to involved consideration of the effect to be given to an incontestability clause. On the other hand, in the cases decided by courts of this State cited to us by plaintiff, in which the incontestability clauses were held to preclude any defense of breach of " good health " conditions, it appears that the incontestability clause as well as the good health clause were contained in the policy itself. (See *Webster* v. *Columbian National Life Insurance Co.*, 131 App. Div. 837; *Chinery* v. *Metropolitan Life Insurance Co.*, 112 Misc. 107.)

There are, however, decisions in other jurisdictions upholding the effectiveness of an incontestability clause to overcome a " good health " clause found in an application for insurance. Such a case was *Mutual Reserve Fund Life Assn.* v. *Austin* (142 F. 398, C. C. A. 1st Cir.). There it was squarely held by a court of high repute, in an opinion which reviewed at length the history and purposes of incontestability clauses, that such a clause would preclude proof of breach of any condition of good health contained in an application for insurance after the insurance company had accepted premiums beyond the period of contestability. The gist of the decision is found in the holding that: " * * * It is the purpose of an ordinary incontestable clause to annul all warranties and conditions that might defeat the rights of the assured. * * *." (*Mutual Reserve Fund Life Assn.* v. *Austin, supra,* 399.) This rule has been followed quite consistently by courts in other jurisdictions. (See *Dibble* v. *Reliance Life Ins. Co.*, 170 Cal. 199; *Mohr* v. *The Prudential Ins. Co. of America*, 32 R. I. 177; *Commercial Life Ins. Co.* v. *McGinnis*, 50 Ind. App. 630; *Grier* v. *Life Insurance Co. of N. Y.*, 132 N. C. 542, and cases cited in 8 Couch's Cyclopedia of Insurance Law, § 2155b and supplement; see, also, case note in 6

L. R. A. [N. S.] 1064, where the editor says that the reasoning of the court in the *Mutual Reserve Fund Life Assn.* v. *Austin* case, *supra,* " seems impregnable.")

A case decided by the highest court of our State involving facts bearing some analogy to those in the present case is *Wright* v. *M. B. L. Association* (118 N. Y. 237). There the certificate (policy) of life insurance contained a provision that no question as to the validity of the application or certificate should be raised after two years from the date of the certificate. The application for the insurance in that case contained a condition that if any misrepresentation or fraudulent or untrue answer were made in the application, or any fact suppressed, the agreement of insurance would be null and void. When sued on the certificate, the defendant alleged, by way of defense, that false and untrue statements had been made in the application, and offered to prove these facts and to show that the policy was void *ab initio* because it had been procured as part of a fraudulent conspiracy to obtain money from defendant by insuring a person known to be suffering from a serious and fatal malady. This defense had been rejected by the trial court and that ruling was sustained by the Court of Appeals upon the ground that the two-year provision above referred to was, in effect, a statute of limitations which barred even a claim that the certificate had been procured through fraud.

It is true that in the *Wright* case (*supra*) the incontestability clause prevented any attack on the validity of either the application or the certificate of insurance. However, the court, in referring to the incontestability clause, said (p. 243): " No doubt the defendant held it out as an inducement to insurance by removing the hesitation in the minds of many prudent men against paying ill-afforded premiums for a series of years when in the end and after the payment of premiums, the death of the insured and the loss of his and the testimony of others, the claimant instead of receiving the promised insurance may be met by an expensive lawsuit to determine that the insurance which the deceased has been paying for through many years, has not and never had an existence except in name. While fraud is obnoxious and should justly vitiate all contracts, the courts should exercise care that fraud and imposition should not be successful in annulling an agreement, to the effect that if cause be not found and charged within a reasonable and specific time, establishing the invalidity of the contract of insurance, it should thereafter be treated as valid. * * *."

But the decision of the question involved herein need not rest on any rule of *stare decisis.* It would seem to be controlled by the public policy of this State as expressed in provisions of our Insurance Law.

Section 163 of that statute provides:

" 1. No policy of industrial life insurance shall be delivered or issued for delivery in this state unless it contains in substance the following provisions, or provisions which in the opinion of the superintendent are more favorable to policyholders: * * *

" (b) A provision that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of one year from its date of issue except for non-payment of premiums and except for violation of the conditions of the policy relating to military or naval service.

" (c) A provision that the policy shall constitute the entire contract between the parties, or, if a copy of the application is endorsed upon or attached to the policy when issued, a provision that the policy and the application therefor shall constitute the entire contract between the parties."

Section 143 of the Insurance Law provides in subdivision 1 thereof: " 1. Except as otherwise specifically provided in this chapter any contract or policy of insurance or annuity contract delivered or issued for delivery in this state in violation of any of the provisions of this chapter shall be valid and binding upon the insurer making or issuing the same, but in all respects in which its provisions are in violation of the requirements or prohibitions of this chapter it shall be enforceable as if it conformed with such requirements or prohibitions."

These sections undoubtedly enunciate a rule of public policy requiring the incorporation of incontestability clauses favorable to policyholders, where policies have been delivered or issued for delivery, and a like rule that, where the application is attached to the policy, these documents be construed as a single agreement, and that contracts of insurance will be enforcible as if these requirements were both contained therein.

An application has been said to be an offer to accept a contract of insurance. (*Whipple* v. *Prudential Ins. Co.,* 222 N. Y. 39, 42, *supra; Glickman* v. *New York Life Ins. Co.,* 291 N. Y. 45, *supra.*) Because of the provisions of our statutes, the application involved herein must be deemed, therefore, to have contained provisions that the policy for which the offer was then being

made, when issued for delivery, would contain an incontestability clause with one year's limitation, and a provision that when the application was attached to the policy, these two documents must be read together to constitute the contract of the parties. As was said in the dissenting opinion in the Appellate Term herein (184 Misc. 525, 529), the argument of the defendant that the application may be considered as a separate agreement is overcome by these provisions of our statute that the documents be read together. It may be noted that the only relevant exception found in the statute that precludes the policy from being " in force " is the nonpayment of premiums. That exception did not apply here. We think, therefore, that under the legislative scheme, one who pays premiums beyond the period of contestability is protected against any defense of breach of a condition precedent. The legislative objective of obtaining for policyholders the benefit of incontestability clauses favorable to them, could readily be defeated if an insurance company might use the simple expedient of inserting a condition precedent in an application which could be used to nullify the incontestability clause years after the policy had been delivered and after the company had accepted numerous premiums under it. Whatever logical force there may be in the reasoning that general rules of the common law of contracts permit proof of breach of conditions precedent to establish that a contract never has become effective, is dispelled when we consider that our statutes direct a different result in a case like the present. In addition, therefore, to the reasons that were assigned in *Mutual Reserve Fund Life Assn.* v. *Austin* (142 F. 398, *supra*) and *Wright* v. *M. B. L. Association* (118 N. Y. 237, *supra*) under the common law for upholding the effectiveness of an incontestability clause, we have in this case the further reason that we must give effect to a well-defined rule of public policy.

The determination of the Appellate Term and the order of the Municipal Court should be reversed, with $20 costs and disbursements in this court and $10 costs in the Appellate Term, and the motion for summary judgment granted.

MARTIN, P. J., GLENNON and COHN, JJ., concur; UNTERMYER, J., dissents and votes to affirm.

Determination of the Appellate Term and the order of the Municipal Court reversed, with $20 costs and disbursements to the appellant in this court and $10 costs in the Appellate Term, and the motion for summary judgment granted. [See *post*, p. 841.]