GRIER v. MUTUAL LIFE INSURANCE CO., OF NEW YORK.

(Filed May 5, 1903.

1. INSUBANCE—*Life Insurance—Premiums — Payment—Contracts — Estoppel.*

   The acknowledgement in a policy of insurance of the receipt of a premium estops the company to test the validity of the policy on the ground of the non-payment of the premium.

2. INSURANCE—*Life Insurance—Premiums—Payment—Contracts—Application.*

   Where a policy of insurance is delivered, its delivery, in the absence of fraud, is conclusive that the contract is completed and is an acknowledgement that the premium was paid during the good health of the insured

3. INSURANCE—*Life Insurance—Application.*

   Where a policy of insurance is delivered it is based on the status of the insured at the time of the application and the insurance company assumes the risk of subsequent ill health of the insured.

ACTION by J. M. Grier against the Mutual Life Insurance Company of New York, heard by Judge *Thomas J. Shaw* and a jury, at January Term, 1903, of the Superior Court of MECKLENBURG County. From a judgment for the plaintiff, the defendant appealed.

*Burwell & Cansler,* for the plaintiff.
*Jones & Tillett,* for the defendant.

CLARK, C. J.   On 26 February, 1901, the plaintiff's intestate made out an application for a policy of insurance upon his life, which was sent to the home office of the defendant, where it was accepted and a policy thereupon was duly executed 9 March and is dated 26 February.   This policy was sent to defendant's agent for delivery, who delivered the same on 14 March.   In the meantime the insured had been

taken on 6 March with a chill from exposure, which was followed by fever; on 12 and 13 March he was free from fever, and the attending physician (witness for defendant) says his condition was not so good the next day (14th) and on the 15th he developed catarrhal pneumonia and died 18 March.   At the time the policy was applied for, the insured said he preferred to pay the premium ($23.30) in cash, and in presence of the defendant's agent told Mr. Lee, who had money of the insured in hand, to pay that sum to the defendant's agent.   On 14 March the defendant agent told Lee he had the policy, who told him, as the said agent testifies, that the insured was not well, that he had a cold, or the grippe, and was up at his house, and suggested that agent go up to his house to see him, but the agent did not do so, and delivered the policy to Lee, who offered the money to the said agent, who told him that he would get it when he collected the other premiums at that point, and on 16 March the said agent paid the premium on this policy to the district agent at Charlotte.   On hearing of the death, the company sent out blanks for proofs of loss, and no offer to return the premium was made till 8 July (after this suit began), though on 26 June the district agent wrote to the plaintiff that "the amount of premium, with interest, paid on 14 March, 1901," had been returned to him by the company, who had declined to pay the loss.   There was no averments in the answer of fraud in the application, or in the suppression of facts, or misrepresentation as to the condition of health of the insured 14 March, when the policy was delivered.

The defendant excepts because the court instructed the jury that if they believed there was a material change in the health of the insured between the time of the application and the delivery of the policy, to answer the issue in favor of the defendant "unless you further find from the evidence

that the defendant company, before the delivery of the said policy, received notice of the said changed condition in the health of said Davidson and waived its right to avoid the policy for this reason." And the defendant further excepted because the court charged that if the company accepted the application on 9 March and executed its policy and sent the same to its local agent for delivery, and, "if you further find from the evidence that on 14 March and before the delivery of the policy to said Davidson (the insured) the said Gordon (defendant's agent) received notice of the material change in the condition of the health of said Davidson, if you find there was such a change, and the said Gordon notwithstanding such notice delivered said policy to Lee with instructions to deliver it to Davidson at once, and for the purpose of making it a binding contract on the defendant company, and that Lee did so, and that Lee offered to pay Gordon the premium upon the policy for Davidson pursuant to instructions from said Davidson, if you find there ever were such instructions; but that Gordon for his own convenience requested that the plaintiff's premium be not paid then, but that the same should be paid him in accordance with the usual course of dealing between himself and said Lee, and that this was agreed to between said parties, and that on the 16th of said month Gordon sent the company's part of said premium in the usual course of business to the defendant, and, upon the death of said Davidson, notice thereof was given to the defendant, and that the defendant sent to the administrator of the deceased blank applications for proving the death of said Davidson with instructions to make out said proofs, then the court instructs you to find that the defendant company before delivering said policy had notice that there had been a material change in the condition of the health of said Davidson since making his application and

before the delivery of the policy, and had waived its right to have the policy avoided for this reason."

There is nothing in these instructions of which the defendant could complain, and our disposition of them renders it unnecessary to discuss the other exceptions.

All the points herein raised were considered and decided by a unanimous court in the recent case of *Kendrick v. Insurance Co.*, 124 N. C., 315; 70 Am. St. Rep., 592. The policy as well as the application provides that if the application is approved and a policy *is issued*, it shall be in force *from the date of the application.* When therefore the application was accepted and the policy was issued 9 March, it dated back to 26 February. In fact the policy certifies that it was signed 26 February. There only remained the delivery of the policy to complete the contract. The provision in the application that the contract shall not take effect until the first premium shall have been paid, during the applicant's continuance in good health, is only a provisional agreement authorizing the company to withhold the delivery of the policy until such payment in good health; but when the company actually delivers the policy, then it is estopped, in the absence always of fraud, to assert that its solemn contract is void either on account of non-payment of premium or of ill health, which stipulations were asserted in the application as conditions to excuse it from such delivery, and are not grounds to invalidate the policy after it has been delivered.

If the premium in fact is not paid, the acknowledgement of payment, so far as it is a receipt for money, is only *prima facie* and the amount can be recovered; but so far as the acknowledgment is contractual, it cannot be contradicted so as to invalidate the contract. See *Kendrick v. Ins. Co.*, 124 N. C., 315; 70 Am. St. Rep., 592, and cases there cited. The same principle is there shown to apply to deeds and all other con-

tracts under seal.   The same rule applies to the stipulations in the application which provide that the contract shall not take effect till the first payment shall have been made during continuance in good health.   The application recites that the agent has given the insured a binding receipt "signed by the secretary of the company, *making the insurance in force from this date,* provided this application shall be approved and the policy signed by the secretary at the Head Office of the Company *and issued."*   It was agreed thereby that if the application was accepted and the policy *issued* the insurance began from the date of the application.   Everything counted from that date, which is the anniversary on which future premiums must be paid or the policy forfeited for non-payment.   The risk of illness accruing after said date was upon the company from its acceptance of the application and "issuance" of the policy, but the company reserved to itself the advantage of a provision that the contract shall not go into effect "till payment of premium during the applicant's continuance in good health," thus giving itself a *locus penitentiae* and making the insured bear his own risk till payment of premium and issuance of policy.   But when the policy is not only issued but delivered, its delivery (in the absence of fraud) is conclusive that the contract is completed (*Ray v. Ins. Co.,* 126 N. C., 166) and is an acknowledgment of payment during continuance in good health. If the agent had not delivered the policy, whether the circumstances would have justified the withholding of the delivery so as to release the company from responsibility is not a matter before us.   He did deliver it, and with full opportunity to see the insured and with a suggestion that he do so, and there is no allegation of fraud and collusion, as in *Sprinkle v. Indemnity Co.,* 124 N. C., 405.   The delivery of the policy closed the contract like the delivery of any other deed, and the preliminary provisions in the application for

withholding thereof ceased to be of any force. In *Kendrick's case supra,* the money was not paid till after a lingering illness and on the very day of the death, and then by a friend, but it was held that the delivery of the policy was conclusive as to the contract being complete.

Numerous authorities can be cited in support of what is here said, but the matter has been sufficiently elaborated in *Kendrick v. Insurance Co.,* 124 N. C., 315; 70 Am. St. Rep., 592. To same purport *Life Asso. v. Findley,* (Texas) 68 S. W., 695; *Indemnity Asso. v. Grogan,* (Ky.) 52 S. W., 959; *Insurance Co. v. Koehlar,* 63 Ill. App., 188; *Ins. Co. v. Schlink,* 175 Ill., 284; *Ins. Co. v. Quinn,* 41 N. Y. Supp., 1060; *McElroy v. Ins. Co.,* 94 Fed. Rep., 990. In *Life Asso. v. Findley* and *Indemnity Co. v. Grogan,* the facts were identical almost with those in this case.

There is no stipulation that the policy shall not be delivered unless the insured is in good health, for that would unjustifiably shift off upon the insured any mortal illness accruing after the application and during the time for which he has paid. But the agreement is that the first premium must be paid during good health, and, in the absence of fraud, the delivery of the policy is conclusive of that fact.

It was contemplated by the parties that the payment should be made with the application and that the receipt then given should protect the insured from that date, if the application were accepted. The issuance of the policy is acceptance of the application and should be based upon the status at the time the application is made, and is not affected by a subsequent change of health, for that is part of the risk the company assumed and for which it was paid. When the premium is not paid with the application, the company reserves the right not to complete the contract till payment of the premium, while the insured is in good health. But, as already said, the actual delivery of the policy concludes the

contract in the absence of fraud. If the local agent were the agent of the insured, the mailing the acceptance—the policy —directed to him would close the contract. *Adams v. Lindsell,* 1 B. & Ald., 68 ; Benj. on Sales, Sec. 44. Certainly, as he is the agent of the company, the delivery of the policy by him is its delivery.

No Error.

Walker, J., having been of counsel did not sit on the hearing of this case.