# GRIFFITH *v.* METROPOLITAN LIFE INSURANCE CO. OF NEW YORK.*

---

LIFE INSURANCE; APPEAL AND ERROR; WARRANTY.

1. While D. C. Code, sec. 657 (32 Stat. at L. 534, chap. 1329), requiring insurance companies to deliver, with every policy issued, a copy of the application made by the insured, so that the whole contract may appear in the application and policy, is to be strictly construed, a mere preliminary statement made to the company by its agent, and which he alone signs, is not a part of the contract of insurance, and need not be delivered with the policy. (Citing *Metropolitan Ins. Co. v. Hawkins,* 31 App. D. C. 493, 14 A. & E. Ann. Cas. 1092.)

---

*Life Insurance.*—As to what must be attached in order to satisfy requirement that "application" be attached to policy, see note to *Langdeau* v. *John Hancock Mut. L. Ins. Co.* 18 L.R.A. (N.S.) 1190.

2. The accuracy of the copy of one part of an application for insurance attached to the policy cannot be for the first time challenged on appeal by the beneficiary, where on the trial her counsel conceded the copy was an exact copy of that part of the original application, and stated that her only contention was that, because of the failure of the insured to attach another part of the application to the policy, the whole application was not delivered with the policy as required by D. C. Code, sec. 657 and it also appears that, under the circumstances, the insurer could have had no motive in attaching an inaccurate copy of the application to the policy.

3. In an action on a policy of insurance, it is not error prejudicial to the plaintiff for the court to admit in evidence two written statements of physicians, which the plaintiff sent to the insurer with proof of death, and to refuse to allow the plaintiff to prove what the insurer customarily required as such proofs, where one of the statements contained no fact not contained in the application for insurance, and the facts stated in the other statement were no more damaging to the plaintiff than her own statements to the company, and the plaintiff made no attempt to show that the statements made by the physician and herself were inaccurate, and where the testimony of the physician making the second statement was in the case, and was to the same effect as his written statement.

4. Where the insured in an application for life insurance agrees that the answers to questions therein shall be taken as warranties, and that if not true the policy shall be void, a representation in the application that the insured had not been attended for a year by any other physician than one named, when in fact she had within two days been attended and treated by another physician for a very serious affliction, constitutes a suppression of a material fact amounting to a misrepresentation and breach of warranty, and precludes a recovery on the policy. (Distinguishing *Prudential Ins. Co. v. Lear*, 31 App. D. C. 184.)

No. 2149.   Submitted Oct. 18, 1910.   Decided Nov. 7, 1910.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia upon a verdict directed by the court in an action upon a policy of life insurance.                                                                    *Affirmed.*

The Court in the opinion stated the facts as follows:

This is an appeal [by Mary Griffith, Executrix of Annie D. Burgoyne] from a judgment of the supreme court of the District of Columbia upon a directed verdict in favor of the appellee, the Metropolitan Life Insurance Company of New York, who was the defendant in that court, involving a policy of insurance issued by the defendant upon the life of the appellant's testatrix, Annie D. Burgoyne.

The facts are found in the stipulation of counsel which was entered into before trial, and which forms a part of the bill of exceptions. On February 8th, 1905, Mrs. Burgoyne, in a signed communication addressed to the defendant, indicated her intention to make application to said company for a policy of insurance, and on the 11th of said month she submitted to an examination by the resident physician of said company. In addition to the physical examination she was required by the physician to answer, upon an application blank, a series of questions there propounded, and to make a series of statements there suggested. She stated, among other things, that she was then in sound health, and that she did not have any physical defect or infirmity of any nature, and that she had not been under the care of any physician within two years, except that a year previously she had been treated twice for menorrhagia by Dr. Latimer; that she had never been seriously ill except as above stated. This application contains the following clause: "To induce the said company to issue said policy, and as a consideration therefor, I warrant and agree, on behalf of myself and of any other person who shall have or claim interest in any policy issued under this application, as follows:" Here follow the questions and statements above noted. Later on in the application is found the following: "And I further declare, warrant, and agree that the statements and answers are strictly correct and wholly true, that they shall form the basis and become part of the contract of insurance if one be issued, and that, if they are not thus strictly correct and wholly true, the policy shall be null and

void." The application also contains a waiver of the provisions of sec. 1073 of the Code, relating to the testimony of physicians, and a provision that no liability shall be incurred by the company until the policy has been issued and delivered and the first premium paid while the applicant is in good health.

On or about the 20th of February, 1905, the company, through its agent, delivered to Mrs. Burgoyne in person the policy of insurance in suit, and she then paid the premium. Death occurred on April 8th, 1906, all premiums having been paid. Upon notice being given to the defendant, blanks were sent plaintiff upon which to make proofs of death. In the blanks, which the plaintiff herself filled out and signed, she stated, among other things, that deceased had been attended by or had consulted "during last sickness" Dr. Latimer and Dr. Miller: that she first consulted Dr. Miller "for last sickness" in February, 1905; that the duration of her last sickness "to my knowledge" dated from February, 1905. Each of these statements was made under oath. Plaintiff procured statements from Dr. Latimer and Dr. Miller. From Dr. Latimer's statement it appeared that he had twice in 1904 prescribed for the deceased for menorrhagia and that she "was readily relieved." In the statement of Dr. Miller, made under oath, it appeared that he operated on the deceased at Columbia Hospital in this city on February 13th and 25th, 1905, for cancer of the uterus. These three papers were duly forwarded to the company by the plaintiff in compliance with the company's requirement that she submit proofs of death.

No question was raised as to the sufficiency of the pleadings, the ground of defense being breach of warranty.


*Mr. W. G. Gardiner* and *Mr. Jesse H. Wilson, Jr.,* for the appellant.


*Mr. B. S. Minor* and *Mr. H. B. Rowland* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

1. Upon the trial of the case the plaintiff objected to the introduction of the original application for insurance in evidence upon the ground that the whole application was not attached to the policy as required by sec. 657 of the Code (32 Stat. at L. 534, chap. 1329), and the ruling of the court upon that question forms the first assignment of error, which we will now consider.

At the time the defendant's local agent forwarded said statement of February 8th, signed by the applicant, he forwarded to the company a preliminary statement, which he alone signed. This preliminary statement is known as part "A," and contains information of a general nature useful to the company in its determination of the question whether it desired to proceed further in the matter. This part "A," however, is not referred to in the policy, is not signed by the applicant, and is no part of the contract of insurance. The statute requires that "a copy of the application *made by the insured*" be delivered with the policy. While this statute is to be strictly construed, such a construction does not require the filing, as part of the insured's application, of a mere preliminary statement of the agent. *Metropolitan L. Ins. Co.* v. *Hawkins,* 31 App. D. C. 493, 14 A. & E. Ann. Cas. 1092.

A further ground for the exclusion of the application is for the first time suggested. It is this: Part "C" of the copy of the application attached to the policy reads: "I am now in sound health." Answer, "Yes." "I am not blind, deaf, or dumb, nor have I any physical defect or infirmity of any kind." Answer, "No." In the original application as set forth in the record there were no answers to these statements or questions. It was conceded, however, by plaintiff's counsel at the trial of the case, upon being asked by the court, that parts "B" and "C" were exact copies of parts "B" and "C" of the original application, and were attached to and delivered with said policy issued to defendant. The record contains the further concession "that the only contention made by plain-

tiff's counsel at the trial was that, because of the failure of the defendant company to attach a copy of part "A" of the original application to the policy, the whole application was therefore not attached to the policy in compliance with sec. 657 of the Code of Laws of the District of Columbia." It would be manifestly unfair, in view of these concessions of counsel, to permit them now to challenge for the first time the accuracy of this copy of the application, and it cannot be permitted. Had this point been raised below, it is probable that it would have been successfully met. But be that as it may, the plaintiff is now estopped to raise the question. It is perhaps worthy of notice that the application contains the provision that "wherever nothing is written in the following paragraphs it is agreed that the warranty is true without exception." It is evident, therefore, that the company could have had no motive in marking these questions and statements answered, when they were not in fact answered.

2. It is specified as error that the court admitted in evidence the aforesaid statements of Doctors Latimer and Miller as a part of the proofs of death, without permitting the plaintiff to prove what the company customarily required as such proofs. Since Dr. Latimer stated no fact not contained in the application for insurance, the admission of his statement in no way prejudiced the plaintiff. We are concerned, therefore, with the statement of Dr. Miller only. In view of the fact that the plaintiff voluntarily procured and submitted this statement, and that from her own statement under oath, submitted therewith, it appeared that the treatment of the insured by Dr. Miller related to the insured's last illness, it is difficult to understand how the custom of the company affected the situation. No attempt was made by the plaintiff to explain away or vary the statements which she had submitted. The statement of this physician was no more prejudicial to her than her own. The two statements were correlated, and no attempt having been made by the plaintiff to show that the facts were different from those therein set forth the proofs were admissible as prima facie evidence in behalf of the com-

pany. *Mutual Ben. L. Ins. Co.* v. *Newton,* 22 Wall. 32, 22 L. ed. 793.

Moreover, it was stipulated that Dr. Miller would testify, if competent so to do, "that he attended and treated the deceased on the 9th day of February, 1905, and operated on her at the Columbia Hospital in the city of Washington, District of Columbia, on February 13th and 25th, 1905, and also on June 2d, 1905, for cancer of the uterus; and that one suffering with cancer of the uterus is not in sound health." The court ruled that Dr. Miller was competent to testify, and under the said stipulation of counsel his testimony was treated as having been offered. While a general exception was noted to the ruling of the court as to the admissibility of this testimony, the point was not pressed, and there is no assignment of error based upon said ruling. It is apparent, therefore, that even though the statement of Dr. Miller which plaintiff submitted in her proofs of death was out of the case, the testimony of the Doctor would still remain.

3. The third and last assignment of error relates to the action of the court, at the close of all the evidence, in directing a verdict for the defendant.

The insured in her application declared, warranted, and agreed that the statements and answers therein made were "strictly correct and wholly true," and that if they were not "thus strictly correct and wholly true" the policy should be null and void. The policy itself was issued "in consideration of the answers and statements contained in the application, * * * all of which answers and statements are hereby made warranties." There was a further provision in the policy, that after two years it should be noncontestable except for nonpayment of premiums or for fraud. From the uncontradicted evidence it appeared that two days before the insured stated in her application that she had not been under the care of any physician within two years, except that she had been treated twice by Dr. Latimer for menorrhagia, she had been attended and treated by Dr. Miller for cancer of the uterus, and that two days thereafter—and a week before

the policy was delivered to her—she was operated upon at Columbia Hospital by the same physician for the same trouble, and that five days after the delivery of the policy to her she submitted to a second operation. The representation that she had not been attended by any physician other than Dr. Latimer for a year, when in truth and in fact she had within two days been attended and treated by Dr. Miller for a very serious affliction, constituted a suppression of a material fact amounting to a misrepresentation and breach of warranty.

In the case of *Prudential Ins. Co.* v. *Lear,* 31 App. D. C. 184, there was no provision in the policy itself that it should be considered null and void in the event of untrue answers to questions propounded in the application. An examination and comparison of the application and policy in that case raised a doubt as to whether the company intended on the whole to require more than the utmost good faith of the applicant, and there being such a doubt, it was, under the well-recognized rule of construction, resolved against the company. Here, however, an examination of the application and policy leaves no room for doubt that all material statements, at least, within the knowledge of the applicant, and it is unnecessary to go further in this case,—were warranted true. Any such statements, if untrue, furnished ground for avoiding the policy. *Jeffries* v. *Economical Mut. L. Ins. Co.* 22 Wall. 47, 22 L. ed. 833; *Aetna L. Ins. Co.* v. *France,* 91 U. S. 510, 23 L. ed. 401.

The two cases relied upon by appellant are not in point. In *Grier* v. *Mutual L. Ins. Co.* 132 N. C. 542, 44 S. E. 28, there was no averment in the answer of the misstatement of facts in the application, *i. e.,* of a breach of warranty. The question before the court was whether, in the absence of fraud, the delivery of a policy is conclusive that the contract is completed, and an acknowledgment that the first premium was paid during the good health of the insured. This question the court answered in the affirmative. It is apparent that the question here involved was not before the court in that case. In *Mutual Reserve Fund Life Asso.* v. *Austin,* 6 L.R.A. (N.S.) 1064, 73 C. C. A. 498, 142 Fed. 398, the policy was

by its terms noncontestable after three years, except for non-payment of premiums or misstatement of age. There was a provision in the policy that it should not be in force unless the insured was in good health when it was delivered. More than three years had elapsed when the death of the insured occurred. The company *disavowed any intention of avoiding the policy for breach of warranty.* Its sole contention was that the good health of the applicant was a condition precedent; and therefore, it appearing that the insured was not in good health within the meaning of the application, either when the application was made or when the policy was delivered, no contractual relation ever existed. The court ruled that the so-called noncontestable clause was inconsistent with this contention, and that the policy was in force from the day of delivery and payment of the first premium. In other words, that the policy was voidable, and not void, within the three-year period.

The judgment must be affirmed, with costs, and it is so ordered. *Affirmed.*