## NEW YORK LIFE INS. CO. v. DUMLER.

(Circuit Court of Appeals, Fifth Circuit. August 4, 1922.)

No. 3831.

1. **Insurance ☞392(8)—Right to claim policy invalid held waived by demanding and receiving premium.**

    A life insurance company waived its right to claim that policy was invalid, because not delivered during good health, where, with notice from disability claim that disability commenced before delivery of the policy, it demanded payment of the second premium, and later received it and waited for some time before electing to rescind.

2. **Estoppel ☞52—Waiver of forfeiture may be created without technical estoppel.**

    Waiver of a forfeiture, though in the nature of an estoppel, may be created by acts, conduct, or declarations insufficient to create a technical estoppel.

3. **Insurance ☞392(1)—Continued holding of premium sufficient consideration for waiver of right to claim policy invalid.**

    When insurer was notified of apparent invalidity of policy, because not delivered during good health, any recognition of policy thereafter waived its right to invalidate it, as its continued holding of the first premium was a sufficient consideration.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Insurance ⊜⇒249—Burden on insurer, suing for rescission.**

In suit by insurance company to rescind policy, because not delivered during good health, the burden of making out a case for rescission was on it.

Appeal from the District Court of the United States for the Northern District of Mississippi; Edwin R. Holmes, Judge.

Suit by the New York Life Insurance Company against Lewis J. Dumler. From a decree for defendant, plaintiff appeals. Affirmed.

A. H. Longino, of Jackson, Miss. (James H. McIntosh, of New York City, on the brief), for appellant.

A. W. Shands, of Cleveland, Miss. (Shands, Elmore & Causey, of Cleveland, Miss., on the brief), for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. New York Life Insurance Company brought its bill of complaint against Lewis J. Dumler in the United States District Court for the Northern District of Mississippi, seeking to cancel and have redelivered to it a policy of insurance for $25,000, issued by it to said Dumler, on the grounds that the application of the insured on which said policy was issued agreed that the insurance should not take effect, unless the first premium was paid, and the policy delivered to, and received by, said assured during his lifetime and good health, and also that said application stipulated that it was made to obtain the insurance applied for, and the applicant represented therein that he never had suffered from any ailment or disease of any kind, or been treated therefor by any physician; that, believing and acting on said statements, complainant on January 29, 1919, forwarded its policy dated January 23, 1919, to its Memphis office, by which it agreed to pay $25,000 on the receipt of proofs of death of said assured, the policy being then in force, and on proof that the assured had become wholly and permanently disabled before becoming 60 years old, and as much as 60 days before any premium was due, to pay to the insured $2,500 per annum during his lifetime and waive the payment of premium for the ensuing years.

The policy was forwarded from the home office to the Memphis office, with instructions to hold it until the company received an inspection report. On February 3, 1919, the home office telegraphed said Memphis office to place said policy in the hands of the agents soliciting the same, for delivery to the assured, if in good health, on payment of the premium. The soliciting agent, Meyers, about February 15, 1919, visited the home of the assured and ascertained he was then sick, was informed as to assured's condition as then understood, delivered the policy to the assured's agent, and the premium was paid. The assured had been taken ill about 10 p. m. on January 26th with multiple neuritis.

There is no proof of concealment or bad faith on the part of either the assured or his representatives as to information concerning assured's condition, or on the part of the soliciting agent in the delivery of the policy or collection of the first premium, and it was stated

on the argument in this court that no such charge was made. It was insisted by the company that no action of the soliciting agent could, under his powers, known to the assured, operate to make a good delivery of the policy, if in point of fact the assured was at the time not in good health, and that the proof demonstrated he was not then in good health. The application for insurance signed by the assured stated that—

"only the president, a vice president, a second vice president, a secretary, or the treasurer of the company can make, modify, or discharge contracts, or waive any of the company's rights or requirements, and that none of these acts can be done by the agent taking said application."

There was testimony to the effect that the custom was to deliver the policy to the soliciting agent, who took the application for insurance, who was to ascertain if the assured was all right physically, and deliver to assured, or return the policy to the company, accordingly as he determined whether or not the condition then existed which justified the delivery, and that the policy was delivered to the soliciting agent, Meyers, who went to Duncan, Miss., the assured's place of residence, was informed of all the then known facts of Dumler's illness, and delivered the policy, collecting the premium. The assured insisted that this action of the company through Meyers showed that it had elected to deliver the policy with knowledge of the facts, and estopped it to now claim that the policy never took effect because of Dumler's condition of health at that time.

On January 19, 1920, the company's agent at Memphis, Gideon, received a letter from the assured, stating that he was, and had been continuously since February 2, 1919, permanently disabled. On the same day, Gideon wrote the home office, stating that he had—

"received a letter from the insured to the effect that he had been totally disabled since February 2, 1919, and is unable to do any kind of work, and is constantly under the care of a physician. He did not advise us the nature of his trouble. Please send us blanks for him to execute."

On January 24, 1920, the home office wrote to its Memphis office, acknowledging the receipt of this letter, inclosing blanks, and stating:

"The insured is to be advised that the premium of January 23, 1920, should be duly paid, in order to protect his rights under the contract pending investigation and consideration of his claim for waiver of premium. The premium so paid will be refunded, if application for waiver be approved by the company."

On February 5, 1920, the physician's certificate, stating that the insured's illness had begun on January 26, 1919, and had continued, was in the company's hands at the Memphis office and was in the home office on February 9, 1920. No instructions were given on receipt of this information not to receive the premium called for in the letter of January 24th. On February 20th, the premium was reported to the home office by Gideon to have been paid. On February 10, 1920, the home office wrote to Wood, its inspector of agencies at its Memphis branch office, that it appeared that the policy was not delivered while the insured was in good health, and asking that he make a thorough investigation of time, place, and manner of delivery, so that

an action for rescission could be commenced, if the facts warranted. It was informed by Wood that the policy was delivered to the agent on February 5, and the first premium had been paid on February 24, 1919.

On February 20, 1920, the home office wired Wood that it intended rescinding Dumler's policy and not to accept any premium, if tendered. On February 21, 1920, Gideon wrote the home office, stating this telegram had just been turned over to him, and that the premium had been reported as paid on his sheet of February 20, 1920. On March 1st the home office wrote to Dumler, denying that said policy ever took effect, because Dumler was not in good health when it was delivered and the first premium paid, but that the assured was then, and at least since January 23, 1920, suffering from multiple neuritis, which facts it claimed were concealed from the company. In this letter the company elected to rescind said policy and tendered all premiums paid and interest thereon. This letter and check for said premiums and interest were not mailed to Dumler, but were sent by the home office to Gideon, and were delivered to Dumler by Gideon in person on March 9th. Dumler declined to accede to the rescission or accept said check. On March 3, 1920, said policy had been sent to the home office with the request that it be assigned to the Planters' Bank of Clarksdale, Miss. On March 15th the company wrote, declining to make said transfer and retaining said policy as having been rescinded. It declined, on formal demand from Dumler, to return the same.

In his answer Dumler prayed that the company be required to return said policy to him. On final hearing of said cause, on the pleadings and evidence, the District Court dismissed the company's bill and rendered a decree in favor of Dumler on the prayer in said answer, ordering said company to return to him said policy.

As before stated, it is conceded by counsel for appellant that no fraud or concealment was practiced on the company, and the single question raised is that under the terms of the policy it never took effect because it was not delivered, or the first premium paid, while the assured was in good health. There was evidence to the effect that the health of the assured up to his attack on the night of January 26, 1919, was good, and that no misstatement was made in the application for the insurance; also there is testimony to the effect that the present sickness of the assured may not prove permanent, but that he may recover. There is also abundant evidence to warrant the District Court in concluding that, when the soliciting agent went with the policy to Duncan, Miss., to deliver the same and collect the first premium, he was fully informed as to the condition of the assured, and delivered the policy in the belief that the assured was not so sick as to not be in good health, within the meaning of the policy.

It is first insisted by the appellee that the agent, Meyers, after the issuance of said policy, was specially sent to ascertain as a fact if the assured was in such condition of health as complied with the terms of the policy as to delivery, and that, while he would have had no right to change the contract, his determination of the fact that the

assured's health was good, within the meaning of the contract, is binding on the company, and estops it to now deny that the assured was in good health; no bad faith on the part of such agent, or deceit on the part of the assured, being now claimed to have existed. There is authority for this position. Grier v. Mutual Life Insurance Co., 132 N. C. 542, 44 S. E. 28; Kendrick v. Mutual Benefit Life Insurance Co., 124 N. C. 315, 32 S. E. 728, 70 Am. St. Rep. 592, and cases therein cited.

It is, however, forcibly contended that the limitations on the authority of Meyers, the soliciting agent, were such that under the terms of the application and policy no act of his would operate as a waiver of the provision of this policy under the decisions of the United States Supreme Court and other federal courts. Northern Assurance Co. v. Grand View Building Association, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213; Lumber Underwriters v. Rife, 237 U. S. 605, 35 Sup. Ct. 717, 59 L. Ed. 1140; New York Life Insurance Co. v. Wertheimer (D. C.) 272 Fed. 730; Maryland Casualty Co. v. Campbell, 255 Fed. 437, 166 C. C. A. 513.

[1] But if, under the limitations on the authority of the soliciting agent as stated in Dumler's application, he could not be considered as having authority to determine if the assured at the time of delivery of the policy was in such a state of health as authorized its delivery, we think that the demand for payment of the second premium by the home office on January 24, 1920, after receipt of notice of the assured's claim to have been permanently disabled from February 2, 1919, its receipt of the premium by February 20, 1920, and its silence to the assured until March 9, 1920, the date when its letter demanding rescission was presented to him by Gideon, operates as a waiver of the claim of invalidity on the ground that the policy had not been delivered during the good health of the assured.

[2] The great weight of authority is to the effect that—

"Waiver of a forfeiture, though in the nature of an estoppel, may be created by acts, conduct, or declarations insufficient to create a technical estoppel, and the courts, not favoring forfeitures, are inclined to grasp any circumstances which indicate an election to waive a forfeiture. Any acts, declarations, or course of dealing by an insurer, with knowledge of facts constituting a breach of a condition in a policy, leading the person insured honestly to think if conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, estops the insurer from insisting on the forfeiture. * * * It is also a settled rule of law that, where an insurer has knowledge of facts entitling it to treat a policy as no longer in force, and thereafter it receives a premium on the policy, it is estopped to take advantage of the forfeiture. It cannot treat the policy as void for the purpose of defense to an action to recover for a loss thereafter occurring, and at the same time treat it as valid for the purpose of earning and collecting further premiums." 14 R. C. L. 1180, 1190.

The testimony shows that the facts as to the time of issuance of the policy, January 29, 1919, and of its retention until notification on February 3, 1919, of the receipt of the inspection report, were all in the company's file in the home office. The policy was thereafter delivered to the soliciting agent for transmission to the assured, according to the averments of complainant's bill in this case. Hence there is

sufficient proof that the home office knew, when it wrote said letter of January 24, 1920, demanding payment of the second premium, on receipt of notice by assured of his disability, and of his being under a physician's treatment, since February 2, 1919, that this state of bad health was claimed to have been in existence at the time when it telegraphed the Memphis office on February 3, 1919, to deliver said policy and collect said first premium. Even if it had doubts as to the claim of the assured that he was on February 2, 1919, and continuously thereafter, permanently disabled, and wished to investigate that fact, it was informed by January 24, 1920, by the assured's written admission that, at the date in February, 1919, when its policy was delivered and its first premium collected, the assured was not in good health and that such state had continued. If it wished to insist on the defense that assured was not in good health when the policy was delivered and the first premium paid, it could easily have stated in said letter of January 24, 1920, that as, under the facts stated in the assured's letter to Gideon, he had been continuously disabled since February 2, 1919, it would receive the premium due on January 23, 1920, subject to an investigation of said facts and its right to declare said policy void, as not delivered to the assured while in good health. Instead, it called the assured's attention to the fact that payment of the second premium was necessary to preserve said policy in force, if his claim to be relieved of its payment was rejected, and stated that the premium would be returned only in the event the claim of the assured that his disability relieved him from its payment was sustained.

Again, although as early as February 10, 1920, the company had taken notice of the want of good health in the assured at the time of the delivery of the policy, it permitted the premium to be paid by the assured without any notice to him of its claim that said policy had never been valid, and did not, until March 9, 1920, make known such claim to him. This is not a case where mere acquiescence, or laches, is relied on as preventing the bringing of a suit to rescind a contract on the ground of illegality or fraud. There a reasonable time after discovery of the ground for rescission is always recognized to exist. It is not so much lapse of time as the change in the situation of the parties, resulting from the delay, which supports the defense of laches. Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873, 36 L. Ed. 738.

[3] Here the defense is the affirmative action of the complainant in calling for, and collecting, the second premium, after having notice of all essential facts necessary to sustain its present claim of invalidity. This is not acquiescence, but affirmative action, electing to treat the policy as in force, after notice, without any reservation of the right to thereafter assert the invalidity arising from such facts. It cannot be said that the company was not on notice of every material fact on which it now bases its claim of invalidity, by January 24, 1920, and that the more formal claim made by Dumler in February, 1920, gave it notice of any additional material fact. It is true that this later claim placed the commencement of his disability on January 26, 1919. But the difference between this date and February 2d was immaterial, as the delivery of the policy, as then appeared by the

company's own records, must have been after February 3, 1919; so that under either notice a want of good health equally appeared at said date of delivery. When the company was notified of the apparent invalidity of the policy, it had the right to avail itself of the defense, or to waive the defect and continue the insurance. Any recognition of the policy thereafter as valid would waive the right to invalidate it. Its continued holding of the first premium was a sufficient consideration.

Here, with information from the insured himself, it not only retained the original premium, but demanded the payment of the second one. This was not the case of information received from a third party, which, if true, furnished ground to declare this policy invalid, and which the company might wish to verify before asserting it to the insured, but information furnished by the insured himself which indicated the policy to have never been validly delivered.

Here there was a clear recognition that the policy was valid; the demand for payment of a premium and its collection after notice from the assured of facts which, with those already of record in the company's office, showed the ground of original invalidity. This would seem to be a clear waiver of the ground of rescission now set up, and to render the decree below correct under a finding of the facts which there was sufficient evidence to support. As is said by the Supreme Court of the United States:

"It follows that the only question upon the instructions of the court to the jury, which is open to the defendant on this bill of exceptions, is whether, if insurers accept payment of a premium after they know that there has been a breach of a condition of the policy, their acceptance of the premium is a waiver of the right to avoid the policy for that breach. Upon principle and authority, there can be no doubt that it is. To hold otherwise would be to maintain that the contract of insurance requires good faith of the assured only, and not of the insurers, and to permit insurers, knowing all the facts, to continue to receive new benefits from the contract while they decline to bear its burdens. Insurance Co. v. Wolff, 95 U. S. 326; Wing v. Harvey, 5 D., M. & G. 265; Frost v. Saratoga Ins. Co., 5 Denio, 154 (s. c., 49 Am. Dec. 234); Bevin v. Connecticut Ins. Co., 23 Conn. 244; Insurance Co. v. Slockbower, 26 Penn. Stat. 199; Viele v. Germania Ins. Co., 26 Iowa, 9; Hodsdon v. Guardian Ins. Co., 97 Mass. 144." Insurance Co. v. Raddin, 120 U. S. 183, 196, 7 Sup. Ct. 500, 506 (30 L. Ed. 644).

See, also, Hanover Insurance Co. v. Dallavo (C. C.) 274 Fed. 258, 263.

[4] The burden of making out a case for rescission is on the complainant. There is no suggestion, either in the pleadings or proof, that there was any improper conduct or bad faith on the part of the Memphis office in the collection of the second premium, which was reported on February 20, 1920. Certainly nothing in the evidence required any such finding by the District Court, who found that the policy was of force and should be returned to the assured.

The decree of the District Court is affirmed.