Martha Crawford, Guardian of Juliann Crawford, Appellee, v. Abraham Lincoln Life Insurance Company, Appellant.

Gen. No. 8,797.

Opinion filed August 24, 1934. Rehearing denied and opinion slightly modified February 11, 1935.

NORTH, GIBBONEY & NORTH, of Rockford, for appellant.

SEYSTER & FEARER and F. W. BURCHELL, all of Oregon, for appellee.

Mr. Justice Dove delivered the opinion of the court.

On November 2, 1932, Leslie R. Crawford executed a written application for a life insurance policy in the appellant company and delivered the same to Harold Seas, general agent for the company, who sent it to the home office of the company at Springfield. The policy as applied for was issued, and on or about November 12, 1932, Seas received from the company the policy, dated November 10, 1932. Crawford was a druggist in Oregon, Illinois, and Seas took the policy to his drug store on the day he received it, found the insured there, showed the policy to him and delivered to him a receipt, by the terms of which appellant acknowledged the receipt of $136.20, the first premium upon the policy. At this time, for the purpose of having the death benefits, as provided in the policy, paid in monthly instalments rather than in a lump sum, Crawford executed a written request directed to the company and this request and the policy were returned by Seas to appellant, and the requested indorsement was made at the home office under date of November 22, 1932, and the policy was returned to Seas, who received it with the requested indorsement thereon. On November 22 or 23, 1932, Seas took it to insured's place of business. Mr. Crawford was not there, but Mr. Snyder, an employee, was, and the policy and a letter from the company addressed to Mr. Seas, advising him that the requested indorsement had been made and that the policy was being returned for delivery to the insured, were left on the prescription counter in the drug store where Mr. Gliddon, a pharmacist, also in Mr. Crawford's employ, found them, and he placed them in the iron, fireproof safe of Mr. Crawford, where they remained until after Mr. Crawford's death, which occurred on November 26, 1932. Due notice and the required proof of death was made to appellant, who declined to recognize the claim as

valid on the ground that the first premium had not been paid or the policy delivered while the insured was in good health.

On April 14, 1933, this suit was instituted. The declaration consisted of two counts. The first count set forth, *in haec verba,* the policy, a copy of the application being attached thereto. The second count omitted the application. In both counts it was alleged that appellant, on November 10, 1932, for a good and valuable consideration, made, executed and delivered to the insured its contract of insurance by which it promised and agreed to pay to appellee, upon the death of her father, the insured, the sum of $5,000 upon receipt of due proof of his death. The declaration then alleged that his death occurred on November 26, 1932, after the execution and delivery of the policy, averred that satisfactory proof of death was furnished, that insured, during his lifetime, kept, performed and complied with all of the terms thereof to be kept and performed by him, and that likewise, the beneficiary had kept, and performed all the terms and provisions of the policy on her part to be kept and performed. A demurrer to the declaration was overruled.

Appellant then filed a plea of the general issue and several special pleas. In the first, fourth and fifth special pleas it was averred that the cause of action was based upon the insurance policy set forth in the first count of the declaration; that the application therefor provided that the insurance should not take effect until the first premium was paid and the policy delivered and received by insured during his lifetime and while he was in good health. The plea then averred that the insured was not in good health on the day the insurance policy was delivered and received by him, but he was then afflicted with a fatal disease known as tumor on the brain, by reason whereof the contract of insurance did not become effective and binding on ap-

pellant. The second and third special pleas alleged that the insurance contract provided that the insurance applied for should not take effect until the first premium was paid and the policy delivered to the insured and received by him during his lifetime and in good health, and averred that the premium was not paid prior to the death of the insured and concluded that the contract of insurance was therefore null and void and of no effect. To the second and third special pleas, replications were filed.

In one replication appellee averred that the first premium provided to be paid in the policy was paid prior to the death of the insured. In another replication appellee averred that the appellant unconditionally delivered said policy of insurance to the insured on November 14, 1932, and in his lifetime, and thereby waived the payment of said first premium. Issue was joined on the first replication and the court overruled a demurrer to the second replication. To the first, fourth and fifth special pleas a demurrer was sustained. Subsequently additional special pleas were filed, which set up certain statements in the application to the effect that the insured had not consulted a physician within 10 years immediately prior to signing the application, that he was, at the time the application was made, in good health, that he did not have, at the time the application was made nor had he had at any time, fits, rheumatism, asthma, pleurisy, influenza, dyspepsia, goiter, ear abscess, any disease of the brain, nervous system, eyes, heart, lungs, kidney, gall bladder or other abdominal organ. These pleas then averred that these statements were untrue, that insured had consulted a physician within the 10-year period, that he was not in good health at the time of the signing of the application and that at the time the application was signed by him he was suffering from a disease of the brain, nervous system, eyes, kidneys and

gall bladder. To these pleas a demurrer was sustained. Appellant elected to abide by its pleas to which a demurrer had been sustained and to abide by its demurrer to the replication to the third plea. With the pleadings in this condition, a trial was had, resulting in a verdict in favor of appellee, the plaintiff below, for $800, upon which judgment was rendered and the record is in this court for review by appeal.

Appellant says in its brief that there is no dispute as to the facts in this case. Appellee, in order to maintain her action, proved by Mr. Seas, the general agent of appellant, the facts as hereinbefore set out about the making of the application, the receipt by him of the policy from the home office of the company on or about November 12, 1933, the fact that he then took it to the insured, Mr. Crawford, whom he found at his drug store, that he exhibited the policy to him there, then sent it back to the company for the indorsement of the instalment provision, and of its subsequent return to him from the home office with a letter from the vice president, stating: ''We return herewith the above policy for delivery to the insured, having endorsed it to provide for payment of the benefit in installments in accordance with his request dated November 8, 1932.'' Mr. Seas also testified that after he received this letter and policy he again went to the drug store of Mr. Crawford and left it for him and detailed what occurred there. He also identified his signature to the receipt for the initial premium of $136.20, which receipt contains the name of appellant, gives the number of the policy, the amount of the premium and gave the effective date thereof to be November 10, 1932. This receipt is addressed to insured and states: ''Receipt of the above described premium is hereby acknowledged. This receipt is valid and binding on the company only if countersigned by Harold Seas. Coun-

tersigned Nov. 12, 1932 by Harold Seas Agent. John R. Neal Secretary."

The manager of the underwriting department of appellant also testified on behalf of appellee, as to the manner of executing policies and the signatures of the officials of the company as they are shown to appear upon the policy, upon the indorsements thereon and upon the foregoing premium receipt. It also appeared from the evidence that his widow saw the policy in his safe at the drug store shortly after his death, and the receipt was found in the pocket of his trousers a couple of days after his death; that on Thanksgiving Day, which was on November 24, in 1932, insured spent the day with his wife, daughter and sister at Dixon; that the morning of that day and the day previous were spent by him at his drug store. He died on the evening of November 26, 1932, and it was stipulated that due proof of his death was received by appellant.

Dr. William S. Bowen was called as a witness on behalf of appellee and he testified that he was first called to treat insured about three hours before he died; that his death was caused by chronic pachymeningitis or brain tumor; that he was the medical examiner for appellant and made the examination of insured for appellant when he took out the policy and in his opinion at that time insured was in normal health, but from his findings at the autopsy he was of the opinion that insured was suffering from the disease of which he died, in some of its stages, at the time he examined him on November 2, 1932.

The evidence on behalf of appellant consisted of the testimony of John R. Neal, secretary and medical director of appellant, and as such he passed upon the application of insured and accepted it, relying upon the statements therein contained as to the matters set up in appellant's additional pleas, and which had to do with insured's answers that he had not consulted

a physician for 10 years, that he did not have nor had had any of the several diseases inquired about and that he was in good health.

Dr. Shultz also testified on behalf of appellant to the effect that in the latter part of April, 1926, he treated the insured for a corneal ulcer on the right eye and continued to treat him for three months thereafter, that he examined him for glasses in September, 1929, and found a recurrence of the corneal ulcer in April, 1930, and from September, 1929, to July 28, 1930, he treated him 24 times. Dr. Murphy testified that he was called to attend the insured a few hours before he died and corroborated Dr. Bowen as to the cause of his death. He also testified as to his autopsy findings and gave it as his opinion that the tumor which caused his death was more than two months in forming, that the insured might have been in good health as far as he or anyone could have known; that if he had headaches they might have been the result of this tumor, but the convulsion he had just before he died was the only symptom thereof which he had.

The policy declared upon provided that it and the application therefor constituted the entire contract of the parties and that statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and it recites that it was issued to the insured in consideration of the application therefor, a copy of which was attached to and made a part thereof, and of the payment in advance of $136.20, being the premium for term insurance terminating November 10, 1933. The policy further recites that the company has caused the policy to be executed this 10th day of November, 1932, that it is effective as of that date and the policy years are computed from that time. The instalment benefit provision recites that in accordance with the written request of the insured, dated November 8, 1932, the pro-

ceeds of the policy payable as a death benefit will be paid in monthly instalments in lieu of a lump sum. This instalment benefit provision is dated November 22, 1932. The application signed by the insured is dated November 2, 1932, and contains such questions as are usually found in similar applications and provides: ''I, the undersigned applicant, hereby agree, in behalf of myself and of any person who may have or claim any interest in any policy issued hereon as follows: . . . That the insurance hereby applied for shall not take effect unless and until the first premium is paid and the policy is delivered to and received by me all during my lifetime and good health.''

It is insisted by counsel for appellant that the trial court erred in overruling the demurrer to the declaration, erred in denying its motion to carry the demurrer to the special pleas back to the declaration, erred in sustaining appellee's demurrer to the special pleas, erred in overruling appellant's demurrer to appellee's replication to the third special plea, erred in the admission and rejection of evidence, in giving of instructions and in denying appellant's motion in arrest of judgment.

In support of its contention that the declaration was defective and that its demurrer thereto should have been sustained, counsel insist that the foregoing provision in the application constituted a condition precedent and therefore appellee should have alleged in her declaration that the first premium was paid and the policy delivered by appellant and received by insured in his lifetime and while he was in good health.

Appellant's first pleading was a demurrer to the declaration, a hearing was had thereon and the demurrer overruled. Appellant did not abide by its demurrer, but filed the general issue. By so doing, appellant admitted the sufficiency of the allegations of the declaration, waived the benefit of its demurrer and

estopped itself from questioning its sufficiency except to insist by a motion in arrest of judgment that the declaration was so defective that it would not sustain a judgment. In *People v. American Life Ins. Co.*, 267 Ill. 504, at page 507, it is said: "The contention of the appellant that the court erred in overruling its general and special demurrers to the declaration cannot receive consideration here. The subsequent filing of its pleas constituted a waiver of that contention under the repeated decisions of this and other courts of last resort. *Walker v. Welch*, 14 Ill. 277; *Pittsburgh, C., C. & St. L. Ry. Co. v. Robson*, 204 id. 254."

It is the general rule, however, that a demurrer should be carried back to the first defective pleading, but under our established system of pleading, a demurrer to pleas cannot be carried back to the declaration when a plea of the general issue remains in the record. *Brawner v. Lomax*, 23 Ill. 496; *Wear v. Jacksonville & Savannah R. Co.*, 24 Ill. 593; *Schofield v. Settley*, 31 Ill. 515; *Culver v. Third Nat. Bank of Chicago*, 64 Ill. 528; *Supreme Lodge K. of P. v. McLennan*, 171 Ill. 417; *Heimberger v. Elliot Frog & Switch Co.*, 245 Ill. 448.

In *Brawner v. Lomax, supra,* the court said: "Upon the other point, that the demurrer to defendant's fourth special plea should have been carried back to the declaration, on the presumption the narr. was defective, we have to say, the record would present a strange appearance, if, after a demurrer to the declaration has been overruled and the general issue pleaded, a demurrer to a defective plea should be carried back to the declaration. The general issue disposes of the demurrer, and of matters to be reached by it, in every subsequent stage of the proceedings. . . . The record would not look well with a general demurrer to a declaration overruled and then carried back over the general issue, when filed to a defective special plea."

This ruling has been adhered to and followed by our courts from this early case, and no error was committed in denying appellant's motion to carry the demurrer to the special pleas back to the declaration.

It is next insisted that the court erred in sustaining a demurrer to the first, fourth and fifth special pleas in each of which it was averred that the application for the policy declared upon provided that the insurance should not take effect until the first premium was paid and the policy delivered and received by insured during his lifetime and while he was in good health. In each plea it was then averred that the insured was not in good health on the day the policy was delivered and received by him, but he was then afflicted with a fatal disease known as tumor on the brain. If the allegations of these pleas are sufficient then all appellant would have been required to prove in order to defeat a recovery under this policy would have been to establish that the insured was not in good health the day the policy was delivered to him by the company.

In *Hungate v. New York Life Ins. Co.*, 267 Ill. App. 257 (certiorari denied by the Supreme Court), it appeared that on July 31, 1930, the insured made an application for an insurance policy and paid a portion of the premium, and she was examined by the company's medical examiner. The application was approved and on August 5, 1930, the policy was issued and sent to the company's agent for delivery. On August 13th, the agent collected the balance of the premium and delivered the policy. The policy contained a provision that the insurance should not take effect unless and until the policy is delivered to and received by the applicant and the first premium paid thereon in full during her lifetime and then only if the insured had not consulted or been treated by any physician since her medical examination. It also contained a clause that the policy took effect as of March 30, 1930. The in-

sured died October 2, 1930, and the company denied liability, inasmuch as the evidence disclosed that the insured had consulted a physician on August 12, 1930, the day before the policy was delivered. In denying the contentions of the company, the court in its opinion said: "It has been held that if any length of time elapses between the making of the application and the issuing of the policy, it is the duty of the insurer to make inquiry when the policy is delivered as to the condition of the health of the insured, and if it fails to do so the delivery is conclusive against the insurer as to the completion of the contract. *American Trust Co. v. Life Ins. Co. of Virginia,* 173 N. C. 558, 92 S. E. 706; *Grier v. Mutual Life Ins. Co.,* 132 N. C. 542, 44 S. E. 28; *National Life Ins. Co. v. Grady,* 185 N. C. 348, 117 S. E. 289. The contracts in those cases contained provisions that they should not take effect until the first premium was paid, nor unless on the date of payment thereof the insured was alive and in sound health.

"In the case at bar appellee construed the provision in the application to mean that before the actual delivery of the policy it should make inquiry as to whether the applicant had consulted a physician since her medical examination and if it was found that she had done so, the delivery of the policy would be withheld. This is apparent from the fact that when appellee sent the policy to the agent for delivery he was instructed that he should not deliver it if the applicant had consulted a physician since her medical examination, and if she had he should return the policy to appellee. The agent had been in the employ of appellee for six years and he says he knew the terms of the application and the policy. Before he delivered the policy he saw the applicant and her husband but did not ask either of them about her health or whether she had consulted a physician. Under the cases above

cited it was the duty of appellee to make inquiry, and having failed to do so the delivery should be held conclusive against appellee as to the completion of the contract. The agent further said that as far as he knew at that time, the delivery of the policy closed the transaction. If that was his conclusion after six years' experience as agent for appellee why should the applicant, a woman without experience in such matters, be expected to know that it was her duty to inform the agent, without being interrogated, that she had consulted a physician? There is no language in the application or the policy that says she should do so.

"Appellee contends that the provision in the application created a condition precedent and that appellant cannot recover because the applicant consulted a physician. *Weber v. Prudential Ins. Co.*, 284 Ill. 326; *Ellis v. State Mut. Life Assur. Co.*, 206 Ill. App. 226; *Hartsock v. Kaskaskia Livestock Ins. Co.*, 223 Ill. App. 433, were cited in support of that contention. In all of those cases the applicants died before the policies were actually delivered and for that reason are not applicable to the situation here presented. There are other Appellate Court cases which take the same view even though the policies were delivered but they are based upon the cases last above cited. To so construe the provision in question would render it very unreasonable. The mere fact that an applicant consulted a physician about the most trivial ailment would be sufficient to prevent the policy from going into effect unless the insurer was advised of the fact. The applicant might pay the premium for several years thinking she had insurance but when she died the beneficiary would find that the contract never became effective. Even an incontestable clause would not apply if a policy never became a valid and binding contract. Such a construction would be abhorrent to reason and justice.

"Insurance contracts frequently provide that the policy shall not be in effect unless when delivered the insured is in sound health. Such a provision has been held to merely mean that the applicant has not contracted a disease between the date of the application and the issuance of the policy; *Johnson v. Royal Neighbors of America,* 253 Ill. 570; *Western & Southern Life Ins. Co. v. Davis,* 141 Ky. 358, 132 S. W. 410; *Modern Woodmen of America v. Atkinson,* 153 Ky. 527, 155 S. W. 1135; *Chinery v. Metropolitan Life Ins. Co.,* 182 N. Y. S. 555. Under that rule of law the provision in question in the case at bar can very well be construed to merely mean that the applicant has not consulted a physician in regard to a disease contracted since the making of her application and before the delivery of the policy. The application was made July 31, 1930, the physician was consulted August 12 and the policy was delivered on the following day. When the physician was consulted on August 12, he found the applicant had a well developed tumor which later turned out to be an ovarian cancer and her death resulted therefrom. There is no evidence that her ailment was contracted after the making of the application and before the delivery of the policy. It is a fair and reasonable inference from the evidence that the disease for which she consulted the physician existed prior to the making of the application for insurance. That being true, the provision in the application was not violated under the cases last above cited and it presents no defense to the action. Appellee makes no claim that the same facts constitute a defense under any other provision of the contract nor does it intimate that the applicant was guilty of any fraud or false representations."

In *James v. National Life & Accident Ins. Co.,* 265 Ill. App. 436, the policy contained a provision to the effect that no obligation was assumed by the company

prior to the date of the policy, nor unless on said date the insured was alive and in sound health and it was insisted that this was a condition precedent and inasmuch as the beneficiary failed to prove that the insured was in sound health when the policy was delivered, the judgment obtained by the beneficiary could not be sustained. In its opinion the court said: "In the case at bar the application for insurance was signed on September 12, 1927, and appellant's medical examiner found and reported that the applicant was a first class risk. The policy was issued October 3, 1927, and delivered at a later date without making inquiry as to the condition of the health of the insured. We think that in such cases the correct rule of law is that if any length of time elapses between the making of the application and the issuing of the policy, it is the duty of the insurer to make inquiry when the policy is delivered as to the condition of the health of the insured, and if it fails to do so, the delivery is conclusive against the insurer as to the completion of the contract. (Citing cases.) We followed those cases in *Hungate v. New York Life Ins. Co.*, in an opinion filed at the present term of this court. It has been held that such a provision as the one in question merely means that the applicant has not contracted a disease between the date of the application and the issuance of the policy. (Citing cases.) The provision does not apply to the condition that existed prior to and at the time of the making of the application. . . . Appellant offered no evidence tending to prove that the insured contracted the disease which caused her death since the making of the application and before the issuance of the policy. On the contrary, it relies upon a statement in the death certificate that the insured had the disease for two years prior to her death."

In the instant case these pleas to which demurrers were sustained did not allege that there had been any

material change in the health of the insured after the date of the application nor was it alleged that the insured contracted the disease which caused his death since the making of the application. All that the pleas allege is that the insured at the time the policy was delivered and received by him was afflicted with a fatal disease and under the foregoing authorities these pleas were insufficient and the court did not err in sustaining demurrers thereto.

It is next insisted that the court erred in sustaining the demurrer to the additional pleas which set up certain statements made by him in his application to the effect that he was in good health at the time the application was made and that he did not have then, nor had he ever had any disease of the brain, nervous system, eyes, heart, etc. The policy declared upon provided that these statements made by the insured in his application, in the absence of fraud, should be deemed representations, and being representations in order for appellant to avail itself of the defense sought to be interposed, it was necessary for it to aver and prove not only that these representations were untrue when the application was made, but that the insured knew at the time that these representations were false. *Aetna Life Ins. Co. v. King,* 84 Ill. App. 171; *Continental Life Ins. Co. v. Rogers,* 119 Ill. 474; *Joseph v. New York Life Ins. Co.,* 219 Ill. App. 452. There was no error in sustaining the demurrer to the additional pleas.

It is next insisted that the court erroneously overruled appellant's demurrer to appellee's replication to the third plea. The declaration alleged that appellant for a good and valuable consideration issued the policy on November 10, 1932, and thereafter made, executed and delivered it to insured. Appellant plead that the contract provided that the insurance applied for should not take effect until the first premium was paid during the lifetime of the insured and while he

was in good health and averred that the premium was not paid prior to the death of the insured. Appellee replied that the appellant unconditionally delivered said policy of insurance to the insured on November 14, 1932, and thereby waived the payment of the first premium.

The demurrer to this replication admitted that the policy was unconditionally delivered to the insured on November 14, 1932, and under the authorities the placing of a completed contract of insurance in the hands of an agent for delivery, without condition, completes the contract. 25 Cyc. 718; *Massachusetts Benefit Life Ass'n v. Sibley,* 158 Ill. 411; and a completed contract of insurance cannot be avoided by proving that the premium acknowledged in the policy to have been paid was not, in fact, paid. *Teutonia Life Ins. Co. v. Anderson,* 77 Ill. 384; *Illinois Cent. Ins. Co. v. Wolf,* 37 Ill. 354; *Provident Life Ins. Co. v. Fennell,* 49 Ill. 180. In *People v. Commercial Life Ins. Co.,* 247 Ill. 92, it was said: "An unconditional delivery of the policy, however, operates as a waiver of the pre-payment of the premium, notwithstanding an express provision therein that the company shall not be liable until the premium is actually paid." See also *Gosch v. State Mut. Fire Ins. Ass'n,* 44 Ill. App. 263; *Electric Life Ins. Co. v. Fahrenkrug,* 68 Ill. 463; *Devine v. Federal Life Ins. Co.,* 157 Ill. App. 254; *Daft v. Drew,* 40 Ill. App. 266; *Concordia Fire Ins. Co. v. Bowen,* 121 Ill. App. 35; *Briggs v. Bankers Accident Ins. Co.,* 214 Ill. App. 181. There was no error in overruling appellant's demurrer to this replication.

Upon the trial appellant offered to prove by Mr. Seas that no money was paid to him by the insured or anyone else during his lifetime, as recited in the premium receipt, but that a relative of Mr. Crawford's, on November 28, 1932, paid him the amount thereof, which he accepted, but within two hours thereafter

he made an unsuccessful attempt to return it, and that the amount was later paid by appellant to the clerk of the court for the benefit of the party entitled thereto, appellant waiving title to the same. To this offer an objection was made and sustained, and this ruling is also assigned as error. Under the authorities, if the premium on an insurance policy is in fact not paid, the acknowledgment of payment in the policy so far as it is a receipt for money is only prima facie evidence of that fact, and in a proper proceeding for the recovery of the premium a recovery may be had, but so far as the acknowledgment is contractual, it cannot be contradicted so as to invalidate the contract. *Grier v. Mutual Life Ins. Co.,* 132 N. C. 542, 44 S. E. 28. Where a contract of insurance recites an acknowledgment of the payment of the premium, the same cannot be contradicted by parol for the reason that the effect would be to change the terms of the contract and in effect destroy the legal purport of the contract, and on the grounds of public policy such evidence as was offered here will not be heard for the purpose of nullifying this policy. *Helbig v. Citizens Ins. Co.,* 120 Ill. App. 58; *Teutonia Life Ins. Co. v. Anderson, supra; Provident Life Ins. Co. v. Fennell, supra;* and *Illinois Cent. Ins. Co. v. Wolf, supra.*

In the instant case the policy provided that after it had been in force during the lifetime of the insured for two years from its date of issue, it shall be incontestable, except for nonpayment of premium. It also recited that it was executed by appellant on November 10, 1932, and that the effective date was November 10, 1932. Notwithstanding these provisions, which are a part of the contract, and notwithstanding appellant, by its failure to file a verified plea, must be held to admit the execution and delivery of the policy sued on (*Firemen's Ins. Co. v. Barnsch,* 161 Ill. 629; *Helbig v. Citizens Ins. Co., supra*), still it insists that the pro-

vision in the application to the effect that the insurance applied for shall not take effect unless and until the first premium is paid and the policy delivered to and received by the insured during his lifetime and while he was in good health is a condition precedent and inasmuch as the declaration failed to allege that the insured received the policy while in good health, it is insufficient to support a judgment and appellant's motion in arrest should have been granted. The declaration averred and the proofs disclosed that appellant issued its policy containing the provision that it was to take effect as of November 10, 1932, and delivered it to the insured. Such being the case, appellant should not now be heard to say that the policy was never in effect. If the policy never took effect, how could it become incontestable? ''The idea that a contract not in existence should become incontestable is elusive.'' *Salts v. Prudential Ins. Co.,* 140 Mo. App. 142, 120 S. W. 714. When appellant issued this policy it had received evidence satisfactory to it that the insured was in good health. If it had not been so convinced it would not have executed its policy and sent it to its agent for delivery. ''A condition precedent is one that is to be performed before the agreement becomes effective. It calls for the happening of some event or the performance of some act, after the terms of the contract have been agreed on, before the contract shall be binding on the parties.'' *Mumaw v. Western & Southern Life Ins. Co.,* 97 Ohio St. 1, 119 N. E. 132. We agree with the language used in the case of *Middleton v. North America Protective Ass'n,* 260 Ill. App. 288, where on page 290, it is said: ''If a policy, containing such a provision, is delivered and all payments are made by the insured for 40 years, and a suit is then brought by the beneficiary, it seems to us it would be highly unjust to hold that before he can recover he must aver and prove that insured was in good health when the policy

was delivered. It might very well be that the insured was not in good health at the time of the delivery, yet if he lived for 40 years and made all payments, his beneficiary would not be entitled to recover under appellee's contention, because it could not be proven that he was in good health when the policy was delivered. In the case at bar, the certificate was delivered, and all payments made for almost three years before the death of the insured. In our opinion, in such a case, the true rule based upon reason and justice must be that the provision in question does not create a condition precedent, but is a matter of defense that must be pleaded and proven. (*Fairfield v. Union Life Ins. Co.,* 196 Ill. App. 7; *Haemer v. Globe Mut. Life Ins. Co.,* 243 Ill. App. 109; *Grier v. Mutual Life Ins. Co.,* 132 N. C. 542, 44 S. E. 28.) . . . In the absence of a plea and proof to the contrary, we think it should be assumed that the insured was in good health at the time the certificate was delivered.''

We do not believe the cases relied upon by appellant state a different rule. It was not therefore incumbent upon appellee to allege or prove, in the first instance, the truth of the answers made by the insured in his application as to his state of health, and we are clearly of the opinion that the declaration properly stated a cause of action, is sufficient to sustain a judgment and that the trial court did not err in denying appellant's motions for an instructed verdict or in arrest of judgment.

Appellant tendered four instructions which were given and which told the jury that if they believed from the evidence that the insured was not in good health at the time the policy was delivered, they should find for the defendant. These instructions were as favorable to appellant as the law justified. By returning the verdict it did, the jury found that the insured was in good health at the time the policy was delivered.

There was evidence to sustain this finding and we are not disposed to interfere therewith.

This record, in our opinion, is free from reversible error and the judgment of the circuit court of Ogle county is therefore affirmed.

*Judgment affirmed.*